THE BOARD OF REGENTS OF THE KANSAS STATE AGRI-
CULTURAL COLLEGE, *et al.*, v. S. K. LINSCOTT.

1. CONTINUANCE—*No Error in Overruling Motion.* The rule in granting or refusing a continuance, and the requisites of an affidavit for a continuance, stated; and *held*, that where the affidavit for the continuance is to some extent defective, and the facts set forth therein can be proved or disproved by various other witnesses, and the trial court overrules the motion for the continuance, and afterward, on the trial, the adverse party offers to permit the affidavit to be read in evidence, notwithstanding the defects of the same, the trial court did not commit any such material error in overruling the motion for the continuance as will require a reversal of its judgment.

2. COUNTY BOUNDARIES, *Changed; Valid Tax Deed.* In 1867 a piece of land situated in Brown county was duly assessed and taxed for that year in Brown county. In March, 1868, the boundary lines of Brown and Jackson counties were so changed as to place this land within the boundaries of Jackson county. On May 5, 1868, the land was sold for taxes to Brown county by the treasurer of such county. Afterward, the tax-sale certificate was assigned by the county clerk of Brown county to the plaintiff; and on June 14, 1880, a tax deed was executed to the plaintiff

by the county clerk of Brown county, and on June 14, 1882, such tax deed was duly recorded in the office of the register of deeds of Jackson county. *Held,* That the tax deed is valid, notwithstanding the fact that, at the time of the tax sale and the execution of the tax deed by the officers of Brown county, the land was situated within the limits of Jackson county.

3. TAX DEED — *Matters Sufficiently Stated.* Where a tax deed shows upon its face that a certain piece of land was sold to the county at a tax sale for delinquent taxes, and that afterward the sum of $50.10 was paid to the county treasurer for the purpose of procuring the assignment of the tax-sale certificate, and the tax-sale certificate was duly assigned by the county clerk, and these matters are stated in the tax deed in exact conformity with the form prescribed by statute, *held,* that the tax deed is sufficient with respect to these matters.

4. NOTICE *for Redemption.* Where lands have been sold to the county at a tax sale for delinquent taxes, the notice of the expiration of the time for redemption provided for by § 137 of the tax laws of 1876, (Comp. Laws of 1879, ¶ 5910, p. 965,) may be given and published while the land is still held by the county.

5. TITLE *of Holder of Tax Deed; Rents.* A tax deed vests an absolute estate in fee simple in the holder of the tax deed, and such holder, upon receiving the land from a party in possession, in an action in the nature of ejectment, may recover for the rents and profits of the land from the date of his tax deed, although the deed may not be recorded for some time after its execution.

6. LAST *Tax Deed, Paramount.* The case of *Hobson v.˙Dutton,* 9 Kas. 477, 488, referred to, and followed; and also *held,* that where different tax deeds for the same land are executed to different persons for the taxes of different years, the tax deed last executed for the taxes of the latest year will be paramount to the tax deed previously executed for the taxes of some previous year.

7. ORDER OF TRIAL; *Discretion of Court.* Under § 275 of the civil code the court is expressly authorized, in its discretion, to direct the order in which the trial shall proceed; and where the defendant, while introducing his testimony, offers to introduce a tax deed in evidence, and the court then permits the plaintiff to introduce evidence tending to show that the tax deed is void, *held,* that the court has not so abused its discretion as to authorize the supreme court to reverse its judgment.

8. TAX DEED, *Void. Held,* That a certain tax deed was void for at least three reasons: First, for an excessive levy of school taxes; second, because of injunction proceedings pending against the county clerk, enjoining him from issuing such tax deed; third, an excessive charge for printer's fee.

9. FINDING, *Sustained.* *Held,* That the finding of the district court that the plaintiff's title was not barred by any statute of limitations is correct, and is sustained by the evidence.

10. SHERIFF'S SALE OF LAND, *No Title Under.* In June, 1862, Sarah J. Mauzey commenced an action for divorce and alimony against her husband, James H. Mauzey, and procured service by publication in a newspaper only, and no appearance was made in the case by the defendant, Mauzey. Afterward, and on April 21, 1863, she obtained a judgment granting her a divorce and for $500 in money, as alimony: no judgment was rendered with respect to any real estate. Afterward, and on April 24, 1863, an ordinary execution was issued on the money judgment, and on June 20, 1863, certain land belonging to James H. Mauzey was sold by the sheriff under the execution. Afterward the sale was confirmed, but no sheriff's deed was ever executed. Afterward the parties claiming under the sheriff's sale took possession of the property. *Held,* That under the laws in force at the time the foregoing proceedings were had, the parties claiming under the sheriff's sale obtained no title to the property.

11. TAX DEED—*Nature of Title—Occupying Claimant.* The title acquired under a tax deed is an independent title, and "vests in the grantee an absolute estate in fee simple," (*Comp. Laws of 1879, ch. 107, § 138;*) and such title extinguishes all former rights and titles of individuals, except those reserved by statute, and hence the occupying-claimant's act does not apply so as to give the occupying claimant a right to compensation for improvements made prior to the execution of the tax deed.

12. NEW TRIAL, *Denied.* *Held,* Under the circumstances of this case, that the court below did not err in overruling the defendant's motion for a new trial on the ground of "surprise, which ordinary prudence could not have guarded against."

13. ——— And *further held,* in such case, that the defendants were not entitled to a new trial on the ground of newly-discovered evidence.

*Error from Jackson District Court.*

ACTION in the nature of ejectment, brought December 2, 1881, in the district court of Jackson county, by *S. K. Linscott* against *The Board of Regents of the Kansas State Agricultural College, Frank Purcell* and *C. W. Noble,* to recover the northwest quarter of section 30, in township 5, of range 15, in said county, and for rents and profits. The defendants filed separate answers, setting up title in themselves, and pleading the statute of limitations.

The first trial in the case was had on March 30, 1882, and the second trial on June 15 and 16, 1882, when the court made the following findings of fact and conclusions of law, to wit:

"1. That on the 2d day of July, 1860, the president of the United States, being thereunto duly authorized and lawfully empowered, did duly execute and deliver to James H. Mauzey a patent in writing of that date for the land in controversy, and thereby granted and conveyed to said James H. Mauzey, his heirs and assigns, the said tract of land described in plaintiff's petition.

"2. The said land was subject to and duly assessed for taxation in Brown county, Kansas, for the year 1867. The taxes for that year were not paid, and the land was duly sold by the county treasurer of Brown county aforesaid for such delinquent taxes on the 5th day of May, 1868, and on the 14th day of June, 1880, the county clerk of said Brown county executed, signed, sealed, acknowledged and delivered to the said S. K. Linscott a tax deed in writing of that date for said tract of land in controversy, which tax deed was based upon the sale of land made by the county treasurer of Brown county aforesaid on the 5th day of May, 1868, at the county seat of Brown county aforesaid for the delinquent taxes, charges and penalties then due and remaining unpaid thereon for the year 1867. The said tax deed is in due form of law, and all the requirements of law relative to the assessment and taxation of land were fully complied with in the matter of the assessment and taxation of said land for the year 1867, and in the matter of the sale thereof and proceedings thereon up to and including the execution, acknowledgment, sealing and delivery of said tax deed to the plaintiff.

"3. On the 24th day of June, 1881, the said James H. Mauzey and Margaret Mauzey his wife, made, executed, acknowledged and delivered to the plaintiff a deed in writing of that date for said tract of land.

"4. On the 21st day of April, 1863, Sarah J. Mauzey, who was then the wife of said James H. Mauzey, obtained a judgment and decree against said James H. Mauzey in the district court of Jackson county, state of Kansas, adjudging and decreeing that the marriage between said Sarah J. and James H. Mauzey be dissolved, that she be restored to her maiden name, and have the custody, nurture, education and control of the minor children of the marriage, and enjoining said

James H. Mauzey from interfering with her in the nurture, education and care of said children, and also that she have and recover of said James H. Mauzey the sum of $500 alimony, and all costs. But said judgment and decree did not award to said Sarah J. Mauzey any other alimony except said sum of $500, and did not declare the same. to be a lien on any specific property, or adjudge that any specific property be sold to satisfy the same, nor was the tract of land in controversy in this action mentioned or referred to in said judgment and decree. [To which findings of fact the plaintiff at the time excepted.]

"5. On the 24th day of April, 1863, the said Sarah J. Mauzey caused an execution to issue on her said judgment, directed to the sheriff of Brown county, state of Kansas, for said sum of $500 and costs, and under said execution the sheriff of said Brown county, on the 5th day of May, 1863, levied on the premises here in controversy, and on the 20th day of June, 1863, sold the same at sheriff's sale to said Sarah J. Mauzey, and issued to her a certificate of such sale. Said sheriff's sale was confirmed by the court, but no sheriff's deed ever issued thereon. The said execution upon which such levy and sale were made was in form an ordinary execution for money only, and did not contain any order or command directing the sale of any specific property to satisfy the same.

"6. The said land was not subject to taxation for the year 1859, but was assessed in said Brown county for taxation for that year, and on the 4th day of April, 1864, there was executed to one H. M. Robinson an instrument in writing purporting to be a tax deed based upon a sale of said land on the 11th day of September, 1860, for delinquent tax for the year 1859.

"7. The said Sarah J. Mauzey (now Anderson) and her husband John M. Anderson executed a warranty deed for said land to A. J. Reid on the 22d day of April, 1865. H. M. Robinson and wife executed a quitclaim deed for said land to A. J. Reid on the 16th day of June, 1865. A. J. Reid executed a warranty deed for said land to P. B. Rust on the 2d day of June, 1869. P. B. Rust executed a bond for a deed to Allen Calkins and Wm. Dunn on October 11, 1869, for said land. Wm. Dunn and wife executed a quitclaim deed for said land to Allen Calkins December 7, 1869. P. B. Rust and wife executed a warranty deed for said land to Allen Calkins on the 6th day of December, 1869. Allen Calkins and wife executed a deed for said land to Wm. R.

Benton on the 14th day of August, 1871. Wm. R. Benton and wife executed a warranty deed for said land to the board of regents of the Kansas state agricultural college on the 15th day of June, 1875, and the said board of regents executed a bond for a deed to the defendant, Frank Purcell, on the 11th day of January, 1879, for said land.

"8. The premises in controversy were entirely vacant and unoccupied from the fall of 1863 until 1870, when said Allen Calkins entered into possession thereof, and he and his grantees have ever since that time been in possession thereof.

"9. The board of regents of the state agricultural college and Frank Purcell have been in the possession of said premises, and the defendant Frank Purcell has received all of the rents, issues and profits thereof for two years last past, and wholly deprived the plaintiff of the same. The said rents and profits for one year next preceding the commencement of this action amount to the sum of $100, and since the commencement and during the pendency of this action amount to the sum of $75.

"10. On the 19th day of August, 1880, the board of regents of the Kansas state agricultural college commenced an action in this court against J. G. Porterfield, county clerk of Jackson county, Kansas, and others, to enjoin the issuing of a tax deed based upon a sale of said land in September, 1877, for taxes thereon for the year 1876, and a temporary order of injunction was on the 19th day of August, 1880, granted and served on said Porterfield, enjoining him from issuing such tax deed during the pendency of said action, which said temporary injunction is still in force; that said Porterfield, in disobedience of said injunction, did, on the 2d day of October, 1880, execute and deliver a tax deed based upon said sale of said land in September, 1877, for taxes of 1876, to one W. W. Gavitt, and on the 12th day of December, 1880, the said W. W. Gavitt, in consideration of $200, to him paid by said Porterfield, and at Porterfield's request, executed a quitclaim deed for said land to the defendant C. W. Noble.

"11. The board of county commissioners of said Jackson county, at the July session, 1877, on the 5th day of July, 1877, let the county printing for the next ensuing year to the proprietors of *The Holton Recorder*, upon an agreement to pay only three-fourths legal rates for printing the delinquent tax-sale notices.

"12. A fee of twenty-five cents was charged against said

land for printing delinquent sale notice, upon the sale thereof in September, 1877, for tax of 1876.

"13. School District No. 55, Jackson county, Kansas, includes the land in controversy, and did include the same in 1876, and at the annual school meeting of said school district, held in August, 1876, a tax was levied on all the property in said school district, as follows: For building fund, one per cent.; for teachers' wages, three mills; for incidental fund, one and one-half mills. This tax levy was included in and constituted a part of the tax on the premises in controversy for 1876, and for which the land was sold in September, 1877.

"14. The said C. W. Noble paid no consideration for said quitclaim deed from W. W. Gavitt, but holds his claim of title thereunder solely as a matter of accommodation for said Porterfield.

"15. The taxes on said land for the years 1876, 1877, 1878 and 1879 were paid by W. W. Gavitt, and together with the penalties, interest, and all costs to date, amount in the aggregate to the sum of $231.38.

"16. The defendant Purcell paid the taxes on said land for the years 1880 and 1881, amounting in the aggregate to $40."

The court found as conclusions of law:

"1. That the tax deed executed by the county clerk of Brown county to the plaintiff vested in plaintiff a title in fee simple in and to said premises.

"2. That at the commencement of this action the plaintiff was seized in fee simple of the land in his petition described, and was entitled to the possession thereof.

"3. That the said tax deed executed by the county clerk of Brown county to said H. M. Robinson was and is void, for the reason that said land was not taxable for the year 1859,

"4. That the plaintiff is entitled to recover of the defendants the premises in controversy, together with the sum of $175, the amount of the rents, issues and profits thereof since the 14th day of June, 1880.

"5. The sale of said land in September, 1877, for the tax of 1876 was void.

"6. That said tax deed was executed by said J. G. Porterfield, county clerk, to said W. W. Gavitt without authority of law.

"7. That the defendant C. W. Noble is entitled to recover

of the plaintiff for taxes, charges, penalties and interest paid by his grantors upon said tax sale of September, 1877, and subsequent taxes of 1877, 1878, and 1879, the sum of $231.38, before the plaintiff shall be let into the possession of said land.

"8. The plaintiff's cause of action is not barred by the statute of limitations.

"9. The title of defendants and each of them in and to said land is null and void.

"10. The alleged sale of the property in controversy by the sheriff of Brown county to Sarah J. Mauzey, cannot be considered in this case, no deed ever having been executed or delivered in pursuance thereof."

To the second, eighth, ninth, tenth, twelfth, thirteenth and fourteenth findings of fact, and each of them, and the first, second, third, fourth, fifth, sixth, seventh, ninth and tenth conclusions of law, and each of them, as made and found by the court, the defendants and each of them excepted, as being erroneous, not sustained by the evidence, and as contrary to the evidence and the law.   They moved for a new trial, which motion the court overruled, and then rendered judgment in accordance with the foregoing findings of fact and conclusions of law.   The defendants bring the case to this court for review.   Other facts are stated in the opinion.

*A. L. Redden,* for plaintiffs in error:

1. The court erred in overruling the application for a continuance; what constitutes proper diligence, varies with each case.   The affidavit made by myself showed all the diligence practicable, and the materiality of Reid's testimony cannot be seriously questioned.   It clearly shows it is part of a chain of evidence of adverse possession, and plaintiff subsequently admitted our possession after 1869, to which time Reid's testimony shows possession.   The plaintiff may claim the error was cured by the offer made a week afterward, to allow this affidavit to be read in evidence as the deposition of Reid; but this came too late.   To hold that this offer rectified the error, would be establishing a dangerous rule.

2. The court erred in admitting the tax deed to plaintiff

in evidence, as the same was void for several reasons: The land in controversy was at the time of the purported sale a part of Jackson county, and the county treasurer of Brown county was not the proper officer to sell the land; nor was the county seat of Brown county the proper place for the sale thereof. It does not appear that plaintiff paid anything to the county treasurer of Brown county for the assignment of the tax certificate to him. Section 117, ch. 107, Comp. Laws 1879, expressly stipulates that the certificate to be given by the county treasurer shall state who paid the money to the treasurer. This being necessary in the certificate, *a fortiori* it should be set forth in the deed. The deed is silent as to the fact, and this silence and omission are fatal. The rule that a deed is *prima facie* evidence that all prior proceedings have been regular, cannot prevail when the deed upon its face discloses facts that make this impossible.

3. The court erred with reference to the oral evidence offered by plaintiff. He had presented a tax deed and claimed under it, which deed was not recorded until June 14, 1882. He was not entitled to recover for rents and profits prior to that date.

4. The tax deed offered by defendants was regular on its face, and should have been received in evidence; as also the deed from H. M. Robinson to A. J. Reid.

5. The exclusion of the tax deed to Gavitt, and deed from him to Noble, and the certificate upon which the tax deed issued, were each errors.

6. The evidence of our possession is uncontradicted, and shows an adverse possession to plaintiff for more than fifteen years.

7. There was error in the tenth conclusion of law made by the court. The certificate of sale issued by the sheriff was good, except as to the right of redemption and parties attacking it by direct proceedings. As against any collateral attack it should be received and considered by the court. (Herman on Executions, 435.) As to the effect of the suit

for divorce and decree rendered in this case, see 9 Reporter, 109, 680, Iowa Sup. Ct.)

8. The court allowed defendants the benefit of the occupying-claimants act only from June 14, 1880, and refused it prior to that date, and it refused to make certain findings of fact asked by them. Each of these refusals I submit was error.

9. I call the court's special attention to the motions to set aside the findings of fact and conclusions of law, and for a new trial and refusal of the same. That the presentation of the tax deed in evidence was a surprise, appears clearly from said affidavit, and that it was purposely withheld by Linscott from record is equally apparent. It was issued June, 1880, and was recorded on June 14, 1882, and the cause tried on June 15; no reason can be assigned for withholding the recording of it, except to keep us in the dark. He recorded his quitclaim deed from Mauzey, but did not this nor his patent. Under the facts of this case, it is needless to argue to satisfy this court that the surprise was not natural and unavoidable. Had the existence of this tax deed been ascertained, that fact could have readily been shown; and that facts can easily be presented at any subsequent trial of this case, of such nature as will avoid the deed, appears very clearly from the affidavits attached to said motion for a new trial. There was further surprise about the patent; it being withheld from record, and plaintiff's possession thereof being unknown. Here appears very clearly the error in refusing a continuance upon the affidavit with reference to the papers in the possession of A. J. Reid, heretofore commented upon. For authorities in support of this assignment of error, see Comp. Laws, 1879, ch. 80, § 306; 7 Kas. 354; Hilliard on New Trials, §§ 42, 49, 521, 542, 547; 25 Ind. 212; 14 N. H. 441; 36 Ill. 161; 25 Tex. 1; 2 J. J. Marsh. 515; 10 Smed. & M. 326; 10 Ga. 143; 5 Conn. 106.

10. The affidavits of Rust and Keller, attached to the motion for a new trial, show very clearly that there was newly discovered evidence, which was material to the defense, and

which reasonable diligence could not have discovered and produced at the trial. In connection with this, I submit that the reading counter affidavits to impeach the testimony or credit of Rust's affidavits was error. Rust was a witness at the trial, and no offer of impeaching testimony had been made; but the day following, without notice to defendants, this affidavit, upon which the ink with which it was written was not yet dry, and to which no counter affidavit could be presented for want of time, was read and considered by the court, and in an hour afterward the court adjourned for the term. Such a course of proceeding was unwarranted by the statute, or any reasonable practice.

*Broderick & Rafter,* and *Hayden & Hayden,* for defendant in error:

1. The court properly overruled the application for a continuance. The affidavit of A. L. Redden was insufficient for the following reasons: No sufficient diligence was shown; the facts should be stated with the same detail as they would be stated by the witness if he were on the stand testifying, or if his deposition were being taken; the question of possession from April, 1865, to June, 1869, could be proved by other witnesses; no statement was made in the affidavit showing the materiality of the alleged papers in Reid's possession, or even what the papers and documents are; the only attempt made by the affidavit to show that Reid's testimony would be material was on the question of adverse possession, and upon this both parties at the trial offered other testimony; the affidavit did not state what facts Reid would testify to, but only what his evidence would tend to prove. (16 Kas. 147–154.)

The plaintiff at the trial offered to allow the affidavit to be read as the deposition of Reid. The matter of granting or refusing a continuance is so largely within the discretion of the trial court, that its ruling thereon should always be sustained, unless it clearly appears that such discretion has been abused. (14 Kas. 273; 11 id. 74.)

2. The court below properly received in evidence the tax

deed to the plaintiff. Under the provisions of chapter 15 of the special laws of 1868, the northern boundary of Jackson county was extended north so as to include said tract of land. No special provision was made in said act, or any subsequent act, relative to the collection of delinquent taxes on any of the lands thus detached from Brown and annexed to Jackson county, and we must therefore look to the general provisions of the tax law for authority to collect the same. That Brown county was entitled to receive all taxes lawfully assessed upon any of its territory for the year 1867, is a proposition too plain to admit of argument; and it is equally plain that until the taking effect of the act of 1868 above referred to, Brown county had a valid lien on the tract of land in controversy for the delinquent tax of 1867 then due thereon. By § 62, p. 274, Laws of 1866, which was in force when said tax was levied, a lien for all taxes attached to the land in question. This section in substance was reënacted by § 74, ch. 107, Gen. Stat. 1868, and § 85, ch. 34, Laws of 1876.

From the above provisions of the statute, it seems plain that the taxes assessed in Brown county against the land in controversy for the year 1867 became a valid lien thereon on the 1st day of November, 1867, and that such lien was continued in force as long as such taxes remained delinquent, notwithstanding the change in county lines by which the land became a part of the territory of Jackson county.

Section 143, chapter 107, General Statutes 1868, furnishes a remedy for the enforcement of that lien. This section was reënacted by § 155, ch. 34, Laws of 1876, and is still in force. Here, then, we find an express authority for Brown county to proceed in the matter of the sale and conveyance of said land for the delinquent tax of 1867, according to the law in force under which such tax originated.

But even in the absence of express statutory authority, the rule seems to be that where a county is divided after land therein has been assessed for taxation, and before sale the land so assessed is included within a new county, a sale made by the authorities of the county in which the land was situ-

ated at the time of the assessment is valid. (*Austin v. Holt,* 32 Wis. 478; Blackwell on Tax Titles, 295, and note; *Moss v. Shear,* 25 Cal. 38; *Devor v. McClintock,* 9 Watts & S. 80; *Waldron v. Lee,* 5 Pick. 323, 330, 331; *Harmon v. New Marlborough,* 9 Cush. 525; *Morgan v. Hendricks Co.,* 32 Ind. 324; Cooley on Taxation, 176, note 2, and cases cited; *Eskridge v. McGruder,* 45 Miss. 294; *Robinson v. Williams,* 6 Watts, 281; *Hampshire v. Franklin,* 16 Mass. 75–86; *Dennison v. City of Keokuk,* 45 Iowa, 266; *Townsend v. Prowattain,* 6 Leg. Gaz. 28; *West's Appeal,* 5 Watts, 87; *B. & M. Rld. Co. v. Saunders Co.,* 4 N. W. Rep. 240.) The case of *Austin v. Holt,* 32 Wis. 478, *supra,* is on all fours with the one at bar.

The tax deed to Linscott being in exact conformity with the form prescribed by § 138, ch. 34, Laws of 1876, the objection raised by plaintiffs in error to the form of the .deed can have no force, in view of this statute expressly authorizing the form used. (14 Kas. 234, 293.)

3. The tax deed to Linscott "vested in him an absolute estate in fee simple of such land," (Gen. Stat. 1868, ch. 107, § 112; Comp. Laws 1879, ch. 107, § 138,) and of course his right to recover for rents and profits would date from the date of such deed, and not from the time of recording the same.

4. The tax deed to H. M. Robinson was void for two reasons: it had no seal, and the land was not taxable for 1859; the patent bore date and was issued July 2, 1860, and is evidence that the land was not taxable in 1859. (9 Kas. 477, 488.) There was no pretense made upon the trial that the land had been proved up and final payment made before the date of the patent.

5. The court below properly allowed the plaintiff to introduce evidence *aliunde* in support of his objections to the tax deed to W. W. Gavitt. Under § 275 of the code the court is expressly empowered to direct the order in which the trial shall proceed. (1 Greenl. on Ev., § 423; Abbott's Trial Ev. 65.) The evidence shows that the claim of Noble, under the

tax deed to Gavitt, was void for three reasons: (1) an excessive levy of school tax; (2) the injunction proceedings; (3) an excessive charge for printer's fee.

6. From the defendants' own showing, there was not, from 1863 to 1870, an actual, visible, exclusive, adverse and continuous possession. (7 Kas. 131; 3 Washb. on Real Prop. 122, 125; 48 Mo. 335; 6 N. W. Rep. 93; 3 id. 403; 4 Ohio St. 542, 551; Tyler on Eject. 808, 809, 810, 908; 29 Wis. 226, 250; 47 Miss. 220.)

7. The court properly held, in the tenth conclusion of law, that the alleged sale of the land in controversy by the sheriff of Brown county could not be considered in the case. The judgment in that case was obtained on service made by publication only, the defendant not appearing. The affidavit to obtain such service was void because it did not describe the plaintiff's cause of action. (12 Kas. 324; 9 id. 398; 17 Wis. 150; 34 Barb. 95; Wade on Notice, §§ 1032, 1035.) Sarah J. Mauzey, instead of taking a decree for the land, elected to take a judgment for $500, and then sold the land on an ordinary execution against his property generally. The rule is well settled that a mere judgment for money, obtained on service by publication only, cannot be enforced by execution against any property except such as is within the jurisdiction of the court and expressly decreed to be sold. (20 Am. Rep. 695; 25 id. 416; Rorer on Judicial Sales, §§ 67, 21, 28, 29; 1 Cent. L. J. 491; 4 Wait's Ac. and Def. 188; Freeman on Judgments, § 127.) A judgment for alimony does not operate as a lien on real estate unless made so by the decree itself. (10 Ohio, 268; 44 Ala. 437.) No sheriff's deed was executed. By express provision of the statute itself, it is the *deed* that "vests in the purchaser as good and as perfect an estate in the premises therein mentioned, as was vested in the party at or after the time when such lands became liable to the satisfaction of the judgment." (Comp. Laws 1862, ch. 26, § 450; Gen. Stat. 1868, ch. 80, § 459; Comp. Laws 1879, ch. 80, § 459; Freeman on Executions, § 323; Rorer on Judicial Sales, 364, § 962; 17 Barb. 157, 161; 55 Mo. 451; 49 id. 337; 63

Ill. 211; *Jefferson v. Wendt*, Sup. Ct. Cal., 4 Cent. L. J. 197, and note.)

8. The court properly refused to allow the defendants the benefit of the occupying-claimants act prior to June 14, 1880, the date of Linscott's tax deed. The title acquired under a tax deed is an independent title, and "vests in the grantee an absolute estate in fee simple," (Comp. Laws 1879, ch. 107, § 138,) and of course extinguishes all former claims, rights and titles of individuals, except those reserved by statute.

9. A careful examination of the record will demonstrate that the defendants' motion for a new trial on the ground of "surprise" was properly overruled, and for the following reasons: (*a*) Reasonable diligence would have prevented the possibility of the alleged surprise. (*b*) No surprise was manifested at the trial, and no delay asked for on that account; the defendants voluntarily took their chances for a decision in their favor, and the first intimation of surprise made to the court was after the trial was over. (*c*) It does not appear from the showing made that a new trial would necessarily change the result. (*d*) The matter of granting a new trial on the ground of suprise is within the sound judicial discretion of the trial court.

Of these in their order: (*a*) This was the second trial had in the case. Upon the first trial, which was had on March 30, 1882, the defendants might, had they so chosen, have had every question in the case examined and passed upon by the court. They might have put the plaintiff himself upon the witness stand and examined him as to every muniment of title possessed or claimed by him. The principal object of allowing a second trial in ejectment, is to guard against the possibility of mistakes and surprises.

Under the provisions of § 368 of the code, they might have demanded of the plaintiff a copy of "every deed, instrument or other writing whereon the action was founded, or which plaintiff intended to offer at the trial;" and a refusal on the part of plaintiff to furnish the copies so required would have resulted in the originals being excluded from evidence at the

trial. Not having availed themselves of the opportunities provided by statute for ascertaining the documentary evidence in the hands of the adverse party, can they now claim that they have been diligent? (2 Binn. 582, 585.)

The deed was recorded two days before the trial, and this was notice to all the world. Concerning the opportunities which a defendant has to inform himself of what the evidence of his adversary will be, see 3 Grah. & W. on New Trials, 876; also Civil Code, § 369. A new trial will not be granted where the surprise originates out of the face of a paper on which alone the right of the plaintiff to recover depends. (1 Grah. & W. on New Tr. 177; 1 Nott & M. 285.) A party has no right to be surprised by evidence within the issues. (10 How. Pr. 261; 2 Park. Cr. 673.) A new trial on the ground of "surprise" will not be granted upon a showing that defendant did not produce his evidence because he did not know that it would be of any use. (3 Grah. & W. on New Tr. 877, 894, 963; Hilliard on New Tr. 537, 542; 15 Tex. 311; 9 N. W. Rep. 756; 2 Leigh, 474; 11 How. Pr. 285; 17 Kas. 598, 602.)

(b) It has universally been held by the courts that if a party who is *surprised* at the trial, allows it to proceed without making his surprise known and applying for a delay, and the decision is against him, he cannot have a new trial by reason of that surprise. If he sees fit to take his chances upon the evidence as it stands, he must be held to abide the result. ( 3 Grah. & W. on New Tr. 894, 964; 4 N. H. Cas. 118, 129; 38 Iowa, 398, 401; 40 id. 678; 42 id. 563; 53 id. 709; 5 Tyrw. 488; 9 Price, 89; 1 Curtis C. C. 384; 46 Mo. 345; 44 Ga. 543; 15 La. An. 220; 7 Cal. 40; 22 id. 160; 2 Binn. 582; 24 Kas. 147, 150, 151; 7 N. W. Rep. 613; 3 id. 460; 9 id. 756; 5 Cow. 173; 7 Ind. 535; 5 Pick. 217; 1 Halst. 225; 30 Barb. 655; 17 Minn. 172; 26 Ark. 496.)

(c) It is essential that defendants should not only show surprise and due diligence on their part, but also satisfy the court that they have a valid defense. ( Hilliard on New Tr. 524; 3 Grah. & W. on New Tr. 876, 877; 45 Ill. 311.)

At best the testimony of Redden and Keller as to what the records of Brown county might show, is merely hearsay. "The facts ought to be laid before the court in the shape of legal evidence, and not hearsay." (Hilliard on New Tr. 516; 5 Halst. 250; 6 Minn. 513; 20 N. H. 77; 14 Kas. 139; 7 Iowa, 81; 3 Grah. & W. on New Tr. 1065.)

The testimony as to the credibility of Rust was proper to be considered. (6 Hilliard on New Tr. 519, 520; 3 Grah. & W. on New Tr. 1068, 1069; 18 Johns. 489; 7 Barb. 271; 24 Pick. 246; 2 Caines, 260; 12 Tex. 189; 3 W. & M. 193.)

As to the affidavit of P. B. Rust, we remark: The testimony of the six impeaching witnesses, which stands uncontradicted, shows him to be entirely unworthy of belief. The fact alluded to in the brief of plaintiffs in error, to the effect that we impeached Rust "before the ink with which his affidavit was written had time to dry," shows the estimation in which he is held by those who are best acquainted with him.

An excuse which would be a good reason for a continuance is not necessarily a good reason for a new trial. (Hilliard on New Tr. 100, § 25; 11 Tex. 296.)

No affidavit was produced of any person who claimed to have any personal knowledge of any facts which the records of Brown county would show, nor was any time asked for to procure such affidavits or proofs. Want of time to procure such affidavits, on their motion for a new trial, is no excuse for the absence of them when no time was asked for to obtain them. (31 Ga. 187; 24 Kas. 147.)

(d) Motions for a new trial on the ground of "surprise" are addressed to the sound discretion of the trial court. (23 Kas. 130, 135, 136; 7 id. 354; Hilliard on New Tr. 523; 20 Ark. 53; 16 Ohio St. 88; 30 Cal. 226; 11 N. W. Rep. 94, 96.)

10. The defendants were not entitled to a new trial on the ground of newly-discovered evidence. By the exercise of reasonable diligence, all of the evidence which they claim is newly discovered might have been discovered and produced before the commencement of the trial, and all of such pre-

tended evidence was known to them before the close of the trial. (Hilliard on New Tr. 495–497; 11 Kas. 104, 107; 14 id. 135, 280, 281; 17 id. 598, 602; 21 id. 31; 11 N. W. Rep. 94–96; 1 id. 315, 318; 3 Grah. & W. on New Tr. 894, 1020, 1021, 1026, 1028–1030, 1043, 1044; 3 Neb. 266.)

"The discovery after the trial that a witness knew a material fact, furnishes no excuse, if he was not questioned as to it." (3 Grah. & W. on New Tr. 1029, 1030; 11 S. & M. 411.)

It is sufficient proof of negligence, if the evidence is known during the trial and before verdict or decision. (Hilliard on New Tr. 496, 498; 3 Grah. & W. on New Tr. 1028, and cases cited; 2 A. K. Marsh. 42; 52 Iowa, 415; 3 Kas. 374, 378; 22 Cal. 160; 30 Ga. 137; 11 Cal. 104; 3 Ired. 310; 11 S. & M. 411; 16 Barb. 221.)

The defendants' statements as to what might possibly be proved by the records of Brown county, do not show newly-discovered evidence. On the contrary, the affidavits show that whatever information they possessed upon the subject was obtained before the trial.

It does not appear by any credible evidence that the defendants have been injured; or that the alleged newly-discovered evidence, in connection with that given on the trial, must require a different verdict. (4 Ohio, 7.)

The trial court having heard the case tried, seen the witnesses and heard them testify, and observed their demeanor, possessed a better opportunity of judging of the merits of the application for a new trial than it is possible for this court to obtain from the most careful inspection of the record. (23 Kas. 130, 135.)

The matter of granting or refusing a new trial upon the ground of newly-discovered evidence being within the sound discretion of the trial court, the inquiry of an appellate court should be, not whether a new trial might have been granted, but whether the refusal involved the violation of a clear legal right or a manifest abuse of judicial discretion. (45 Cal. 92; 11 N. W. Rep. 94, 96; 6 Cush. 383; 8 Tex. 331; 1 G. Greene, 106; 6 Eng. 671; 13 Minn. 109.)

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of eject-ment, brought December 2, 1881, in the district court of Jackson county, by S. K. Linscott against the board of re-gents of the Kansas state agricultural college, Frank Purcell and C. W. Noble, to recover the northwest quarter of section 30, in township 5, of range 15, in said county, and for rents and profits. The defendants filed separate answers, setting up title in themselves, and pleading the statute of limitations. The first trial of the case was had on March 30, 1882, and the second was had on June 15 and 16, 1882, when the court made certain findings of fact and conclusions of law, and rendered judgment upon the same in favor of the plaintiff and against the defendants, who now bring the case to this court and ask for a reversal of such judgment.

James H. Mauzey was the original patentee of the property in controversy. The patent was issued to him by the govern-ment of the United States, on July 2, 1860; and there is nothing in the record of the case prior to the decision of the court below, showing that he had any interest in the property prior to that time. Prior to March 1, 1868, the property in controversy was situated in Brown county, Kansas; but since that time it has been included by a change of boundary lines, in the county of Jackson. (Special Laws of 1868, ch. 15, § 2.)

The plaintiff, Linscott, claims title to the property in con-troversy under a quitclaim deed executed by Mauzey to him, on June 24, 1881, and recorded in the office of the register of deeds of Jackson county, on June 25, 1881, and under a tax deed executed by the county clerk of Brown county to him, on June 14, 1880, in pursuance of a tax sale had on May 5, 1868, for the taxes of 1867, which tax deed was re-corded in the office of the register of deeds of Jackson county, on June 14, 1882.

The defendant C. W. Noble claims title to the land in controversy under a tax deed executed to W. W. Gavitt by the county clerk of Jackson county on October 2, 1880, and

recorded in the office of the register of deeds of Jackson county on the same day, and a quitclaim deed from Gavitt to Noble, executed ·December 20, 1880, and recorded in the office of the register of deeds of Jackson county on the next day.

The other defendants, Frank Purcell and the board of regents of the Kansas state agricultural college, claim title to the property in controversy by virtue of a *sale* (without a deed) made by the sheriff of Brown county in 1863, to Sarah J. Mauzey, under an execution issued by the clerk of the district court of Jackson county, upon a judgment rendered by such court in favor of Sarah J. Mauzey and against James H. Mauzey, for $500 as alimony, in an action for divorce; and by virtue of a tax deed executed by the county clerk of Brown county to H. M. Robinson on April 4, 1864, and recorded in the office of the register of deeds of Brown county on the same day; and by virtue of deeds of conveyance from Sarah J. Mauzey and H. M. Robinson, down through various intermediate claimants to Frank Purcell, who is now in possession of the property and claiming the same as owner immediately under the board of regents of the Kansas state agricultural college, as his grantor. The defendants also claim title by virtue of an adverse possession, and the statutes of limitations.

The plaintiffs in error, defendants below, claim that the court below committed error in various particulars.

I. They claim that the court below erred in overruling the defendants' application for a continuance. We cannot say, however, that the court below did so err. Granting or refusing a continuance is so largely within the discretion of the trial court, that its ruling in the matter will·always be sustained unless it clearly appears that such court has abused its discretion or mistaken some well-settled principle of law. (*Davis v. Wilson*, 11 Kas. 74; *Swenson v. Aultman*, 14 id. 273; *Payne v. National Bank*, 16 id. 147.) And where the continuance is asked for on account of the absence of the evidence of a material witness, the affidavit should show not only

that the party applying for the continuance has used due diligence to obtain such evidence, but the affidavit should also state the facts which it is expected the absent witness would testify to, in the same manner in which such facts should be stated in a deposition. (See case last above cited.) In the present case the affidavit for the continuance was not sufficient. It hardly showed sufficient diligence. It did not state the facts which it was claimed the absent witness would testify to, as well as they should have been stated. Besides, the facts were such that they could have been proved or disproved by various other witnesses, and they were in fact disproved by other witnesses on the trial; and the plaintiff offered on the trial to permit the affidavit to be read in evidence, notwithstanding the objections that might be urged against it.

II. The plaintiffs in error, defendants below, also claim that the court below erred in admitting the tax deed to the plaintiff in evidence; and this for the reason that the tax deed was executed by the county clerk of Brown county, although the land in controversy was then included within the limits of Jackson county and was included within such limits when the tax sale was made and the tax deed executed.

We do not think this objection to the tax deed is good. When the land was taxed, it was in fact, under the statutes then in force, situated within the boundaries of Brown county; and when the boundaries of Brown and Jackson counties were so changed as to place the land within the boundaries of Jackson county, no provision of law existed or was created by statute or otherwise authorizing the taxes already levied upon the land to be collected in Jackson county; but many of the provisions of the statutes then and now in force indicate that the taxes should be collected in Brown county, notwithstanding the change of boundary lines. Brown county levied the taxes, and immediately a lien was created by statute on the land for the taxes, which lien under the law was to continue in force until such taxes were paid. (Laws of 1866, ch. 118, § 62; Gen. Stat. of 1868, ch. 107, § 74;

Laws of 1876, ch. 34, § 85; Comp. Laws of 1879, ch. 107, § 85.)

The statutes also provided that "the repeal of a statute does not revive a statute previously repealed, nor does such repeal affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced under or by virtue of the statute repealed." (Comp. Laws of 1862, ch. 188, § 1; Gen. Stat. of 1868, ch. 104, § 1; Comp. Laws of 1879, ch. 104, § 1.) Also, the statutes in 1868 and since, further provided that "all matters relating to the sale and conveyance of lands for taxes under any prior statute shall be fully completed according to the laws under which they originated, the same as if such laws remained in force." (Gen. Stat. of 1868, ch. 107, § 143; Laws of 1876, ch. 34, § 155; Comp. Laws of 1879, ch. 107, § 155. See also the cases of *Austin v. Holt*, 32 Wis. 478; *Moss v. Shear*, 25 Cal. 38, and the numerous cases cited in the brief of counsel for defendant in error; also Blackwell on Tax Titles, 295, and note.) In the case of *Austin v. Holt*, ante, it was decided that where a county was divided *after* land therein was assessed for taxes and returned delinquent and *before* it was sold, and by such division the land was included within a new county, the sale and deed for such taxes made by the proper officers of the old county were valid. Some of the other cases referred to by counsel for defendant in error are to the same effect.

III. The plaintiffs in error, defendants below, also claim that the plaintiff's tax deed was void, because it does not appear therein that the plaintiff paid anything to the county treasurer of Brown county for the assignment of the tax-sale certificate to him. Now the tax deed shows upon its face that $50.10 was paid to such treasurer, and the deed itself is in exact conformity with the form prescribed by statute. (Laws of 1876, ch. 34, § 138; Comp. Laws of 1879, ch. 107, § 138.) We suppose that that is all that is required. (See also *McCauslin v. McGuire*, 14 Kas. 234; *Morrill v. Douglass*, 14 id. 294.)

IV. The plaintiffs in error, defendants below, also claim

that the plaintiff's tax deed is void for the reason that no sufficient notice could have been published of the expiration of the time for redemption. The statute requires that such notice shall be published for at least four months prior to the expiration of such time for redemption. (Tax Law of 1876, § 137.) The plaintiffs in error claim that this could not be done while the land was held by the county under the tax sale, and that it could not have been done after the tax-sale certificate was assigned to the plaintiff, and before the tax deed was executed, for the reason that the tax-sale certificate was assigned on June 2, 1880, and the tax deed was executed on June 12, 1880, and that four months could not have intervened between these two dates. We think the plaintiffs in error are mistaken. The notice may be given while the land is still held by the county. Section 137 of the tax law provides for such notice, and it provides that such notice shall contain "a list of *all* unredeemed lands and town lots." This language is certainly broad enough to cover all lands that have been sold for delinquent taxes, whether the lands have been sold to the county and are still held by the county, or not. Any other construction of the statute would work great inconvenience, and would certainly not be what the legislature intended. Besides, this question is raised for the first time in this court.

V. The plaintiff's tax deed vested in him an absolute estate in fee simple in such land. (Gen. Stat. of 1868, ch. 107, § 112; Laws of 1876, ch. 34, § 138; Comp. Laws of 1879, ch. 107, § 138.) And of course his right to recover for the rents and profits dates from the date of his deed, and not from the time of recording the same.

VI. The tax deed to H. M. Robinson was void and of no effect. It was executed for the taxes of 1859 — a time when the land was not taxable, as was found by the court below, and as the evidence seems to show. (*Hobson v. Dutton*, 9 Kas. 477–488.) There was no pretense made upon the trial that Mauzey had made final payment for the land to the government in 1858, as the plaintiffs in error now claim; and there was no

evidence introduced on the trial tending to show the same. From anything appearing in the case up to the close of the trial and the decision of the court below, Mauzey did not own or have any interest in the land until July 2, 1860. But suppose the land was taxable in 1859, and that this deed to H. M. Robinson, executed April 4, 1864, was valid; still it could not be valid as against the plaintiff's tax deed, which was executed June 14, 1880, for the taxes of 1867—six years afterward. For where different tax deeds for the same land are executed to different persons for the taxes of different years, the tax deed last executed for the taxes of the latest year will be paramount to the tax deed previously executed for the taxes of some previous year.

VII. The plaintiffs in error, defendants below, also claim that the court below erred in permitting the plaintiff below to introduce evidence tending to show that the tax deed from the county clerk of Jackson county to W. W. Gavitt was void. We do not think that any such error was committed. Under § 275 of the civil code, the court is expressly authorized in its discretion to direct the order in which the trial shall proceed, and in the exercise of a sound judicial discretion we think the court did not err in permitting the plaintiff below to introduce his evidence tending to show that the tax deed to Gavitt was void at the time such evidence was introduced.

It is also claimed that the evidence was erroneous for other reasons. Possibly some of it may have been; but under the circumstances it could not have affected prejudicially any of the substantial rights of any of the defendants.

VIII. From the evidence and findings of the court below, it would appear that the tax deed to Gavitt was void for at least three reasons: First, for an excessive levy of school taxes; second, because of injunction proceedings pending against the county clerk, enjoining him from issuing such tax deed; third, an excessive charge for printer's fee. The execution of this tax deed was an attempt to build up a title to the land in controversy in violation of the injunction, against the title of

Mauzey and the plaintiff and of all the defendants except Noble. We think, under the circumstances, the court below rightly held that it was void. But the court below allowed Noble all taxes, interest, penalties, etc., paid by him or his grantors in procuring such tax deed. This is all that Noble, or the parties standing back of him, are entitled to claim.

IX. We think the finding of the court below that the plaintiff's title was not barred by any statute of limitations is correct. As we understand, the defendants now claim only under the fifteen-year statute of limitations, and certainly both from the evidence and the findings of the court below, the defendants did not, either in the aggregate or otherwise, hold the property adversely to the plaintiff and his grantors for the period of fifteen years. There was not only no evidence tending to show that the land was occupied from 1863 up to 1869, but the evidence clearly and conclusively showed that the land was vacant and unoccupied during that time, and the court below so found.

X. Mrs. Mauzey never had any title to the property in controversy. She never obtained a sheriff's deed, as none was ever executed. Her claim to the property was founded solely upon a sheriff's sale, and this sale was made by virtue of an execution issued upon a judgment for $500 in money, in an action for divorce and alimony; and in this action no personal service was ever made upon the defendant Mauzey, nor did he make any appearance in the case, but service was made only by publication of summons in a newspaper. No judgment was rendered in the case with reference to the land in controversy, and there was no prayer in the petition expressly asking for a money judgment. The petition, however, prayed for "reasonable alimony," and "for such other and further relief as the nature of her case in equity may require." We think it may therefore be safely said that Mrs. Mauzey never obtained any title to the property in controversy, and therefore had no title to transfer to any of the defendants. Besides the other irregularities, we might say that a mere sheriff's sale never vests a legal title: it takes a

deed to vest a legal title upon a sheriff's sale. (Civil Code of 1859, § 450; Civil Code of 1868, § 459; and see authorities cited in brief of counsel for defendant in error.) But at the time Mrs. Mauzey's action for divorce and alimony was brought, which was in June, 1862, and when her judgment in such action was rendered, which was on April 21, 1863, and when said sheriff's sale was made, which was on June 20, 1863, the statute concerning divorce and alimony was not a part of the code of civil procedure, and there was then no provision for issuing an ordinary execution in such an action, and no provision making a money judgment in such an action a lien upon any property, and probably no such judgment could be a lien upon any property. (*Olin v. Hungerford,* 10 Ohio, 269.) Besides, a purely personal judgment for money upon service by publication alone is not generally regarded as having any validity. (See authorities cited by counsel for defendant in error.)

XI. The court below properly refused to allow the defendants the benefit of the occupying-claimants act prior to June 14, 1880, the date of the plaintiff's tax deed. The title acquired under a tax deed is an independent title, and "vests in the grantee an absolute estate in fee simple." (Comp. Laws of 1879, ch. 107, § 138.) And of course such a title extinguishes all former rights and titles of individuals except those reserved by statute.

XII. The plaintiffs in error, defendants below, also claim that the court below erred in overruling the motion for a new trial on the ground of "surprise which ordinary prudence could not have guarded against." Now after a careful examination of the entire record of the case, we cannot say that the court below committed any such error: (1.) It would seem from the record that reasonable diligence on the part of the defendants below would have prevented the possibility of the alleged surprise. As before stated, the case was commenced on December 2, 1881; a first trial of the case was had on March 30, 1882; and the second trial, at which the judgment was rendered of which the plaintiffs in error now

complain, was had on June 15 and 16, 1882. There seems to have been ample time for the defendants to have made all necessary preparation for their case. Besides, at the first trial, they might, if they had so chosen, have had every question in the case examined and passed upon by the court; they might have put the plaintiff himself upon the witness stand, and examined him as to every muniment of title possessed or claimed by him. The principal object in allowing a second trial in actions of ejectment like the present action is, to guard against the possibility of mistakes and surprises. See also §§ 368 and 369 of the civil code, as furnishing a means whereby parties may obtain copies of instruments held by the adverse party. Under these sections, the defendants could have obtained a copy of the plaintiff's tax deed, provided they had had the slightest suspicion that he held or claimed to hold under any such tax deed; or, if the plaintiff had failed to furnish a copy to the defendants, after a proper demand therefor under said sections, then the defendants could have excluded it from being introduced in evidence on the trial. (2.) It also appears from the record that no surprise was manifested at the trial, and no delay asked for on account of any supposed surprise. The case was tried before the court without a jury, and the postponement of the case for a day or a few days could easily have been had, to enable the parties to obtain any additional evidence; or the case could have been continued till the next term of the court. But it would seem that the defendants voluntarily chose to take the chances for a decision in their favor upon the evidence introduced, and for the first time intimated that they were surprised after the trial was completed, and after they found that the decision of the court was against them. (See the numerous authorities cited by counsel for defendant in error.) (3.) It does not appear from the showing made on the hearing of the motion for a new trial, that a new trial would necessarily, or even probably, lead to a different decision. (4.) The granting or refusing of a new trial upon the ground of surprise is largely within the sound judicial discretion of the trial court.

(See *Green v. Bulkley,* 23 Kas. 130, 135, 136; and authorities cited by counsel for defendant in error in the present case.) We certainly cannot say, in the present case, that the court below abused its discretion, or mistook any well-settled principle of law.

XIII. The defendants below were not entitled to a new trial on the ground of newly-discovered evidence, for the reasons, (1) that much of it was not newly-discovered evidence; (2) that by the exercise of reasonable diligence all of the supposed newly-discovered evidence could have been discovered before the commencement of the trial; (3) it is not clear if it had been introduced on the trial, that it with the other evidence would have required a different decision; (4) the principal witness with regard to this supposed newly-discovered evidence was thoroughly impeached; and (5), the question of granting a new trial for this reason was largely within the sound judicial discretion of the trial court. (See authorities cited by counsel for defendant in error.) We think the defendant in error, plaintiff below, had authority to impeach the testimony of the witnesses of the defendants below, introduced on the motion for the new trial. Such a practice will certainly tend to promote the interests of justice.

The judgment of the court below will be affirmed.

All the Justices concurring.