**TAYLOR et al. v. LAWRENCE et al.**

No. 23815. Feb. 18, 1936.

Grace Arnold, for plaintiffs in error.

R. K. Robertson, for defendants in error.

CORN, J. This is an appeal from an order of the district court issuing a writ of assistance in the cause entitled "Joe Morris. Plaintiff, v. Lizzie Ray, H. D. Ray, and

Frank F. Taylor, Defendants," by virtue of the judgment rendered September 5, 1929. foreclosing a real estate mortgage.

Sheriff's sale was made of said property to Joe Morris, mortgagee, and said sale was by the court confirmed, and sheriff's deed issued.

At the time of this foreclosure sale, the taxes were several years delinquent upon the property, and on May 19, 1930, after having been regularly advertised, said property was sold to the county at the resale tax sale, and a deed to same made and delivered to the chairman of the board of county commissioners of Creek county.

This property was conveyed by deed from the county commissioners to Morris Schuman on June 23, 1930, and on June 28, 1930, Morris Schuman and Otis Allen conveyed, by quitclaim deed, the said property to the defendants in error.

On October 14, 1930, these defendants in error filed an action in the district court of Creek county, entitled "W. E. Lawrence, M. M. Lawrence Harrison, Plaintiffs, v. Frank Taylor and Bess Taylor and Joe Morris, Defendants," said action being in the nature of an ejectment, and in which they deraign their title through the deed from Schuman and Allen to these defendants in error, which said action has ever since been pending in said court.

After beginning the above litigation and while it was pending, to wit, on April 9, 1931, the defendants in error procured from Joe Morris a quitclaim deed conveying whatever interest he may have had in said property to these defendants in error.

On December 14, 1931, defendants in error filed their application for a writ of assistance in this cause basing same upon the order of the court confirming the sale of said property to Joe Morris in said foreclosure action. The said application was sustained by the district court, and the writ of assistance issued.

A part of the findings of fact by the court is as follows:

"Here is the way the situation looks to me. After this mortgage was foreclosed. this defendant's rights were precluded and the judgment enjoined him from ever asserting any right, title, interest or possession. The possession, under any theory of ownership or possession, up to the date of that judgment, all of his interests were precluded. He was done. And it was his duty to surrender possession to the purchaser at sheriff's sale voluntarily. Now, it seems that he anticipated what he was going to be required to do and voluntarily surrendered possession and left the premises and they were vacant until, as he says, on the 7th day of June, 1930. What is the date of this judgment foreclosing the mortgage? Mr. Robertson: The 5th day of September, 1929. The Court: When did Mr. Taylor testify he surrendered possession? Mr. Robertson: He wasn't in possession at the time the mortgage was foreclosed at all. The Court: Well, he surrendered possession some time before that. Mr. Taylor: 'h here had been a tenant in there, Judge, and the property had been vacant. The Court: How long had you been out of possession when the mortgage was foreclosed? Mr. Taylor: Well, from the date—when the mortgage was foreclosed. The Court: Yes. Mr. Robertson: I think possibly two years. Mr. Taylor: I hadn't been living in the house; there had been a tenant in there, and I received the rents until the receiver was appointed, then the receiver received the rents. The Court: You had been collecting the rents up until the time the receiver was appointed? Mr. Taylor: Yes, sir. The Court: But you had not lived in the property for how long? Mr. Taylor: Well, I hadn't lived in the property, Judge, since about 1926, sometime in 1926.

"The Court: This action is a suit in equity, in a court of equity, foreclosing real estate mortgage. This writ of restitution is part of the action; it grows out of the action and is in equity. Now then, the defendant Taylor is forever precluded from asserting any right, title or interest out of the relationship that existed up to the time of the foreclosure of the mortgage. Now, that doesn't mean that he never could assert a title to that property or retake possession. It merely means that he is precluded from ever asserting any right, title, interest or possession under the facts, pleadings and evidence in that case. Now, when would he ever have a right to retake possession of that property? He never would have a right to retake possession of that property until he had purchased some title and gained some right that would give him at least color of title or right of possession; and he could not by force go there and break into the building. He had no right to dispute her title to that property. She had some property in there. She claims she had an automobile in the garage and was in possession and had been for several days, and he with force of arms went there and broke the doors and went in and took possession, forcibly; and he has no right, title, interest, possession or right of possession under any right, and doesn't claim any. His only excuse for taking the possession is based upon the theory that it had been sold at tax title sale and the county owned it, and he in-

tended to put in a bid, and he did put in a bid and he overbid Mr. Schuman, or he tried to; but it did not avail him anything. The bid was not accepted. Schuman's bid was accepted. We are not trying the merits of that controversy, but at any rate, he admits he did not get title, but that Schuman got title. Her testimony is that in May preceding the time that Mr. Taylor claims he took title to it, she went into possession under a contract of sale; that she bought it but that the deed was not executed until the 28th day of June, 1930, and she was in actual physical possession on the date Mr. Taylor took possession.

"Miss Arnold: Could I remind you this, no one had any title.

"The Court: I am reasoning on her theory up to that point. It is clear to the court, up to that point, that he is a mere trespasser of that property, just a plain trespasser, with no greater rights than any stranger walking down the street and going there and kicking the door in and moving in and stating, 'I am going to stay here until somebody is big enough to put me out.' That is what it meant.

"Now, taking another theory of it, all the rights Joe Morris had in the property by virtue of his sale had been precluded by the tax title sale. He was out. He was a stranger, after the county had sold it at tax title sale, either in the first sale to the county or the resale to Schuman or the county.

"Now, let's take this side of it. Joe Morris' rights had been precluded by the sale. The mortgage foreclosure and all of the judgment under the foreclosure, had been canceled in the tax title sale deed, and nobody had any rights under that. That had all gone, and the county has title to the property. And then Morris Schuman has title to the property. This plaintiff, Mrs. Harrison, takes possession under a contract for a deed with Morris Schuman, I think in May, 1930, and was in actual, physical possession on the date that this defendant entered the property.

"Now, then, if the tax title sale is legal, and the presumption of law is that it is legal in every detail and every respect, then that tax title deed foreclosed the interest of the equities of all persons, Joe Morris, whatever he might have had, Frank Taylor, whatever he might have had, the purchaser at the sheriff's sale, whatever he might have had. It absorbed all of the equities and the title stood in the form of a tax title deed in the name of one Morris Schuman. And here comes in a number of strangers down the street, all of them knowing there was a tax title deed out, a good tax title deed out, and there is a scramble for possession, and one gets in and holds it forcibly.

"The question then arises, if you accept that theory of it as correct, the question then arises as to the choice of remedies, just the choice of remedies testing the right of possession. You couldn't bring a suit in forcible entry and detention, because that is purely a possessory action growing out of the relationship of landlord and tenant, and the question cannot be tried any more than as an incident to the right of possession.

"The next question is one to quiet title or in ejectment for possession of the property.

"It seems the plaintiff in this case, upon somebody's advice, I imagine Judge Cunningham's advice, instituted suit in ejectment in this county, based upon what she did, her exhibits in the tax title deed, and steps to regain possession under the tax title deed.

"There isn't any question under the evidence in this case, in either event, that this plaintiff is entitled to possession of that property. If you take the question of the foreclosure of the mortgage, on that theory of it, and this is an action growing out of that, the tax title deed is merged into the quitclaim deed under the mortgage foreclosure and becomes one title. If you take that theory of it, she is entitled to have her right sustained and be given possession.

"On the other hand, if this is a suit in ejectment and the question of the title is up, why the plaintiff recovers upon the strength of her title, and the title is all in her. The defendant doesn't show any title at all. All he shows is a forcible possession of the property. He doesn't show that the defendants have any rights at all, either in equity or at law, either in ejectment or in a suit for restitution. If I were trying the ejectment suit, I would be bound to find for the plaintiff. He cannot recover on the weakness of her title. He must stand upon the strength of his own, and he doesn't have any.

"Miss Arnold: They have to recover possession on the strength of their title, not the weakness of their adversary's.

'The Court: That is true. All the strength is on their side, if there is any strength at all.

"Miss Arnold: We are entitled to an opportunity to find out if they have any strength, and an action in ejectment is the only way.

"The Court: That is the whole case, the question of selection of remedies. That is the only thing for the court to decide, whether or not this is the proper remedy. It is not a question of the plaintiff's right to recover at all; it is the question of the selection of remedies. Is this the kind of remedy under the facts in the case?"

(After further discussion and argument of counsel, the following):

"The Court: Since the defendant here, who is now in possession of the property, shows no right, title or interest in the property, but shows that he did take forcible possession over the protest of Mrs. Harrison, who told him that she had a deed to the property, and he knew that fact at the time, that was enough to warn him, and he admitting that he has no title to the property from any source but simply expected at some future time to purchase a title, which he failed to do, the court therefore finds that the defendant Taylor was a trespasser at the time he took possession of the property on the 7th day of June, and has continued to be a trespasser from that date until the present time; and the court concludes, further, that this plaintiff acquired two lines of title, one from Morris Schuman and Otis Allen, who held the title by virtue of a resale tax deed purchased from the county, and also a quitclaim deed purchased from Joe Morris, who was the purchaser at the foreclosure of the real estate mortgage and owner of the property under sheriff's deed, and that this defendant, Frank Taylor, being a party to that suit and one of the defendants, and the judgment of foreclosure forever precluding the defendant from asserting any right, title interest, or possession in or to the property, and the defendant showing no right, title, interest, color of title, possession, or right of possession, must therefore, as a matter of law, occupy the status of a trespasser.

"It is the judgment of the court that the writ of assistance heretofore issued be sustained, and the defendant directed to forthwith surrender possession to the plaintiff of the property described in the plaintiff's application for the writ of assistance. Now this judgment, as I take it, does not affect in any way their right to try this case out on ejectment."

The only question to be determined in this case is whether the resale tax deed to the county foreclosed any right that Morris, holder of the sheriff's deed, may have had to a writ of assistance.

Section 12760, O. S 1931, reads in part as follows:

"The deed shall be signed and executed by the county treasurer in his official capacity, and acknowledged before some officer authorized to take acknowledgments of deeds; and when substantially thus executed and recorded, in the proper record of titles to real estate, shall vest in the purchaser a full right, title and interest in and to said lands. Such deed shall be presumptive evidence in all the courts of the state. * * *"

The applicants, far from impugning its regularity, have made it the basis of their ejectment action, as clearly appears by their petition therein and exhibits attached thereto.

The title taken by Creek county under this resale deed was a virgin title, comparable to a patent from the government; unaffected, either for good or ill, by anything pertaining to the former chain of title. The rule is well expressed and in the strongest possible language in Baird v. Stubbins, 58 N. D. 351, 65 A. L. R., at page 1013, in actual excerpts from the opinions of various state courts, as follows:

"The defendant here was not such a purchaser. She does not claim under the record owner, but by conveyance from the state, which, if valid, cuts off the title of the record owner altogether. Ibid. (Smith v. Williams 44 Mich. 240, 244, 6 N. W. 662). A tax deed makes no reference to the former owner or owners. It does not purport to convey the estate of the former record owner. There is no privity between the holder of the fee and one who claims a tax title upon the land. The latter title is not derived from, but in antagonism to, the former. The holder of the latter is not a privy in estate with the holder of the former.' Hussman v. Durham, 165 U. S. 144, 147, 41 L. Ed. 664, 665, 17 Sup. Ct. Rep. 253, 254.

"A valid tax title is a new title—'an independent grant from sovereignty, which bars all other titles or equities, whether of record or otherwise.' Windom v. Schuppel, 39 Minn. 35, 38 N. W. 757 758. It 'cuts off all interests acquired by purchasers at tax sales for taxes prior to that upon which the tax deed is based.' Emmons County v. Bennett, 9 N. D. 131, 133, 81 N. W. 22.

"If the tax deed is valid, then, from the time of its delivery, it clothes the purchaser, not merely with the title of the person who had been assessed for the taxes, and had neglected to pay them, but with a new and complete title in the land, under an independent grant from the sovereign authority, which bars or extinguishes all prior titles and incumbrances of private persons, and all equities arising out of them.' Hefner v. Northwestern Mut. L. Ins. Co., 123 U. S. 747, 751, 31 L. Ed. 309, 311, 8 Sup. Ct. Rep. 337, 338.

" 'A tax title, from its very nature, has nothing to do with the previous chain of title; does not in any way connect itself with it. It is a breaking up of all previous titles. The party holding such title, in proving it, goes no further than his tax deed; the former title can be of no service to him, nor can it prejudice him. * * * In an ordinary case, it matters not how many different interests may be connected with the title, what may be the particular interest of the party in whose name the property may be listed, for taxation; it may be a mere equitable right;

if the land be regularly sold for taxes, the property, accompanied with a legal title, goes to the purchaser, no matter how many estates, legal or equitable, may be connected with it.' Gwynne v. Nisswanger, 20 Ohio, 556, 564. See, also, Jinkiaway v. Ford, 93 Kan. 797, L. R. A. 1915E, 343, 145 P. 885, Ann. Cas. 1916D, 321; State Agri. College v. Linscott, 30 Kan. 240, 1 P. 81; Goodman v. Sanger, 91 Pa. 71; Patterson v. Langston, 69 Miss. 400, 11 So. 932."

Note that the last paragraph above states "the former title can be of no service to him," yet the defendants in error, after the issuance of the tax deed, and after the tax title had come into their hands and they had sued upon it, took a quitclaim deed from Joe Morris, the pretended former owner as set forth in their application for writ of assistance, upon which to predicate their right to a writ of assistance.

There are no cases to be found taking any contrary view to that expressed above. This court is fully in accord with the rule therein as shown by the following language from Swan v. Kuehner, 157 Okla. 37, 10 P. (2d) 707 (loc. cit. 47):

"The purchaser at a valid tax resale procures a title from the government which is free and clear from any former right of any former owner of the real estate. * * *"

This court is not concerned with any other remedies that the defendants in error may have, but from the views heretofore expressed, we are of the opinion that the order of the trial court should be, and is, reversed, and cause remanded, with directions to the trial court to vacate said order and sustain said motion of the plaintiffs in error to quash said writ of assistance.

McNEILL, C. J., and RILEY, WELCH, and PHELPS, JJ., concur.