**SPAULDING et al. v. BEIDLEMAN et al.**

No. 7437.—Opinion Filed June 27, 1916.

Rehearing Denied September 12, 1916.

(160 Pac. 1120.)

1. **Trial—Reception of Evidence—Purpose of Introduction.**

Where an instrument is offered in evidence, and the court inquires as to the purpose for which it is offered, and counsel offering such instrument states such purpose, if the instrument be inadmissible for the purpose stated, its rejection will not constitute reversible error, although it might have been admissible in evidence for some purpose other than that stated by counsel.

2. **Attorney and Client—Mutual Rights and Liabilities—Contract for Compensation.**

A contract for attorney's fees and the giving of a note and mortgage to secure the same, made after the inception of the litigation in which the attorney's services are to be rendered, although it be scrutinized with care, will not be set aside, in the absence of any allegation or proof of fraud, mistake, or imposition.

3. **Champerty and Maintenance—Contracts Invalid—Compensation of Attorney.**

A contract for attorney's fees is not champertous and void merely because it provides that the client shall consult and advise with the attorney before making any compromise of the litigation.

(Syllabus by Burford, C.)

Error from Superior Court, Muskogee County; H. C. Thurman, Judge.

Action by George C. Beidleman and others against Josie C. Spaulding and others, to foreclose a mortgage. From a judgment for plaintiffs, defendants appeal. Affirmed.

See, also, 49 Okla. 197, 152 Pac. 367.

Bailey & Wyand, C. A. Moon, George S. Ramsey, E. A. De Meules, M. E. Rosser, and S. H. Kauffman, for plaintiffs in error.

Merwine & Newhouse and George C. Beidleman, for defendants in error.

Opinion by BURFORD, C. This was an action instituted in the superior court of Muskogee county by George C. Beidleman et al., to foreclose a certain mortgage executed by Jennie Yarbrough and Will Yarbrough to secure a note in the sum of $2,000 and interest. The petition alleged the execution of the note and mortgage and default therein, and prayed for judgment of foreclosure. Josie Spaulding and H. S. Evans answered, setting up that the mortgage was given in pursuance of a certain contract entered into between Jennie Yarbrough and her husband, on the one hand, and Merwine & Newhouse, on the other hand, whereby Merwine & Newhouse, attorneys at law, were employed to prosecute a certain action. This contract provided that the attorneys were to receive for their services an undivided one-half interest of whatever amount they might recover or save Jennie Yarbrough by means of their professional services. The contract contained this stipulation:

"After any suit may be filed by said attorneys they agree not to settle or compromise the same without the consent of the said Jennie Yarbrough, and the said Jennie Yarbrough after the date hereof agrees not to settle said cause without consulting and advising with her said attorneys about the same."

It was further alleged that said contract was solicited by Merwine & Newhouse, attorneys, and that they agreed to pay all costs of the action, and that therefore the contract and the mortgage based upon it were void as against public policy. This portion of the answer also alleged that a suit in ejectment was tried in the district court of Muskogee county for the recovery of the land named in the mortgage by an action being brought by Jennie Yarbrough against Josie C. Spaulding et al.; that said cause was appealed to the Supreme Court and reversed (Yarbrough v. Spaulding, 31 Okla. 806, 123 Pac. 843), and again tried in the district court and appealed to the Supreme Court, "and, while the appeal was pending was compromised, by which said Josie C. Spaulding became the owner of said land." Spaulding v. Yarbrough, 41 Okla. 731, 140 Pac. 782.

For a second defense Josie Spaulding set up that at the time of the execution of said mortgage, and long prior thereto, she had been; through her tenant, in actual possession

of said premises, and that Jennie Yarbrough was not in the possession thereof, nor had she taken any rents or profits therefrom for a space of one year prior to the execution of the mortgage in suit; that Jennie Yarbrough was the allottee of said land, and acquired the same direct from the Creek Nation, and that Jennie Yarbrough at the time of the execution of the note and mortgage did not have any just title to said land, or any part thereof. This second defense alleged that the contract above referred to, and the mortgage given in pursuance thereof, was void because in violation of the provisions of the Code in relation to champerty, being sections 2259, 2260, Rev. Laws 1910. Jennie Yarbrough answered much along the same line.

Plaintiffs filed separate replies to the two answers, in which they admitted that they were attorneys, and had performed the services set out, and that the actions referred to in defendants' answer had been tried, appealed, retried, again appealed, and compromised and settled, as therein set out, but denied that they had solicited the litigation, or that they had agreed to or had paid the costs of the action. They set out fully their services rendered in relation to the various cases, and further alleged that the execution of the note and mortgage was a separate, new, and distinct contract to Merwine & Newhouse and to George C. Beidleman, for services rendered, and that the original contract, which was between Jennie Yarbrough and Merwine & Newhouse, had been abandoned; that the mortgage was recorded; and that Josie Spaulding took her title through a quitclaim deed given on the compromise of the former litigation, which was after the execution of the note and mortgage. Upon these issues a trial was had to the court.

At the trial the plaintiffs offered in evidence the note and mortgage and rested. The defendants then offered in evidence a deed from Jennie Yarbrough and Will Yarbrough to Josie C. Spaulding, dated June 18, 1909, and filed for record in the office of the register of deeds of Muskogee county on the same day. This was the original deed involved in the prior litigation. To the introduction of this deed an objection was made on the ground that it is incompetent, irrelevant, and immaterial, and did not tend to prove any issue in the case. Thereupon the following colloquy took place between court and counsel:

"By the Court: For what purpose is the deed offered?

"By Mr. Ramsey: For the purpose of showing that Josie Spaulding was in posses-

sion under color of title at the time this mortgage was made.

"Mr. Merwine: If that is the reason, we wish to present that question to the court.

"By the Court: All right; I will hear you."

Counsel then presented the question to the court, as shown by the record, on the proposition of whether or not the deed was competent under sections 2259-2261, Rev. Laws 1910. After the discussion had progressed for a time Mr. Ramsey, for the defendant, stated that before the court passed upon the point he desired to offer some other testimony, and then offered "to prove by parol testimony, and other evidence extraneous to the enrollment records of the Commission to the Five Civilized Tribes, that Jennie Yarbrough, the allottee of the land, was more than 18 years of age prior to May 27, 1908."

A great deal of space is taken in the briefs in the discussion of the effect of the decisions of this court in Yarbrough v. Spaulding, 31 Okla. 806, 123 Pac. 843, and in Spaulding v. Yarbrough, 40 Okla. 731, 140 Pac. 782. In our judgment, a determination of the questions raised in this regard is not essential to the proper decision of this case. Although sections 2259, 2260, Rev. Laws 1910, forbid, in terms, the buying of lands in suit or pretended titles, or procuring the sale of land of which the grantor has not been in possession, or received the rents or profits for more than one year, section 2261 provides:

"The last two sections shall not be construed to prevent any person having a just title to the lands, upon which there shall be an adverse possession, from executing a mortgage upon such lands."

The question in the case at bar then, in so far as the validity of the mortgage under these sections was concerned, was whether or not Jennie Yarbrough had just title to the lands in question at the time of the execution of such mortgage. If it were proven that she did not have such title at the time, then, under the statute, proof of adverse possession would come in, cutting off any after-acquired title, and the mortgage would be worthless, but if she did have such just title, the fact of adverse possession could not affect the validity of the mortgage.

Defendant's answer alleged, in the first defense, that she, Josie Spaulding, took title under the compromise, which would place her title subsequent to that of the mortgage. But in the second cause of action it is alleged that at the time of the execution of the mortgage Jennie Yarbrough had no just title to the lands. This answer was not challenged in any regard; and, had it been sought to

prove the allegations of the second defense, a different question would be presented, but counsel did not seek to prove the allegations that Jennie Yarbrough had no just title at the time of the execution of the mortgage, as set out in the second defense. Upon question by the court it was specifically stated that it was offered for the purpose of showing possession under color of title. This question, so far as the mortgage was concerned, was absolutely immaterial and irrelevant, until it had been shown that Jennie Yarbrough had no just title at the time of the execution of the mortgage. Color of title is clearly distinct from just or absolute title. It is defined to be "that which in appearance is title, but which in reality is no title." State v. Farrier, 47 N. J. Law, 383, 1 Atl. 751. See 2 Words and Phrases (O. S.) 1265, where many decisions, adopting this definition, are collected. As was said in Wright v. Mattison, 18 How. 50-56, 15 L. Ed. 280:

"The courts have concurred, it is believed, without an exception, in defining 'color of title' to be that which in appearance is title, but which in reality is no title."

This definition is adopted by this court as early as Woodruff v. Wallace, 3 Okla. 355, 41 Pac. 357, and has never since been changed. In view of it we cannot say that "color of title" is synonymous with just or actual title.

Counsel urge that plaintiff in error ought not to be bound by statements of counsel during the heat of trial. We cannot conceive, however, when a litigant ought more justly to be bound by the statements of his counsel than during the trial which the attorney is employed to prosecute, or why it is proper that we should hold that where special inquiries are made by the court, and answered by counsel, the parties ought thereafter be heard to urge that they are not bound by the statements thus made. The evident purpose of the court was to ascertain the reasons of plaintiff in error for offering the deed. It was said to be offered upon a definite theory. Upon that theory it was not competent or material. Whether or not it might have been competent upon some other theory it is not necessary for us to decide, for we have held so frequently that it has become settled beyond question that parties will not be allowed to assume one attitude in the trial court and another here. Wallace v. Duke, 44 Okla. 124, 142 Pac. 308; Dodder v. Moberly, 28 Okla. 334, 114 Pac. 714; Herbert v. Wagg et al., 27 Okla. 674, 117 Pac. 209; Hamilton v. Brown, 31 Okla. 213, 120 Pac. 950; Checotah v. Hardridge, 31 Okla.

743, 123 Pac. 846; St. L. & S. F. R. Co. v. Key, 28 Okla. 769, 115 Pac. 875. Nor does it appear that there were any special circumstances justifying the assumption of any lapse of memory or understanding upon the part of counsel. At the opening of the trial two instruments were offered by plaintiff without objection. Plaintiff then rested, and defendant offered the deed in question. A short objection was made, and then the colloquy above set out took place. From this record it certainly does not appear that there was any such "heat of trial" that we ought to hold that counsel, of the experience of the attorney in charge of this case, forgot the definite legal meaning of the terms employed, as adopted by the courts of this state, and, not incidentally, but in response to a definite question, stated that which he did not mean.

The refusal to permit this deed to be introduced for the purpose for which it was offered was not, in our judgment, error, as it was immaterial at that stage of the proceeding, and was never afterward made material.

Nor is it necessary that we should decide the question raised as to the effect of the act of May 27, 1908 (c. 199, 35 Stat. 312) upon the rights of persons who had actually become of age prior to its passage, and upon whom there were no restrictions as to alienation, but who had not executed any conveyances of their land prior to the passage of the act. The reason is that this evidence could only have been competent or material to show that Jennie Yarbrough had a right to convey the land prior to the execution of the mortgage to plaintiffs. But it was immaterial to show that she had a right to convey until it was shown that she had made some conveyance prior in date to the mortgage. This was not shown nor, as we have above stated, was any proper offer to show such state of facts made.

The final question is as to the validity of the note and mortgage. It was alleged in the reply, and there was testimony to sustain it at the trial, that the note and mortgage were given in pursuance of a new agreement, and not to carry out the contract with Merwine & Newhouse. It is to be noted that Beidleman was not a party to this contract, but was a party to the note and mortgage.

It is urged that transactions between attorney and client should be examined with the greatest care. Conceding this settled doctrine, there is not the slightest evidence in the record in relation to any fraud or imposition upon the client, in the procurement

of the note and mortgage, r that the amount charged for the services rendered was excessive. It was denied that the plaintiffs had solicited the employment, or that they had agreed to or had paid the costs of the action. The trial court found a general judgment for the plaintiffs, which would carry a decision of all of these disputed questions in their favor, and after an examination of the record we thoroughly agree with such a conclusion. The allegation that the note and mortgage were a new contract, and the finding of the trial court in the plaintiffs' favor, would take out of the case the question of the validity of the original contract. However, we have considered the allegations of the plaintiffs in error in regard to this contract. It is urged that the contract is against public policy because it requires that Jennie Yarbrough should consult and advise with her counsel before making a compromise of the cause. Upon this question we are of the opinion that the public policy of this state does not condemn such a contract, for the reason that the statutes of this state in regard to attorney's liens (sections 248, 249, Rev. Laws 1910) make the opposite party liable for the attorney's fee, where there is a proper cause of action, the lien has been asserted, and the cause compromised without the consent of the attorney. The original act, Comp. Laws 1909, sec. 276, provided for the liability unless the attorney had notice of the settlement and an opportunity to be present. This, in effect, gave the attorney the right to be present at the settlement and advise his client. If, by filing a lien, the plaintiff could have accomplished practically the same result as that accomplished by their contract, we see no reason to declare that contract void as opposed to public policy, as the Legislature has, by analogy at least, expressed the public policy of the state to the opposite effect. Nor do we see anything wrong or unjust in requiring that clients, especially of Indian blood, some of them ignorant, and all of them but recently wards of the government, should be required to consult with the attorneys who have their interests in charge, before making a settlement of pending litigation which might, and probably would, without the advice of such attorneys, be unwise and improvident. This case does not present a contract where the client agrees not to compromise the cause of action without the attorneys' consent. Here the contract only requires that the client shall consult and advise with her attorneys before affecting any compromise. The contract does not take the conduct of the litigation out of the hands of the client, as did the contracts in the cases cited by plaintiff in error. of

which K. C. Ry. Co. v. Service, 14 L. R. A. (N. S.) 1105, note, and cases there cited are examples, but only requires that she shall have the benefit of their advice before settling her cause of action. No decision has been cited which goes so far as to hold such a contract invalid. We are of the opinion, therefore, that under the state of this record, not only was the original contract valid, but also the subsequent note and mortgage.

It was admitted that the defendant Jennie Yarbrough was the allottee of this land. The execution of the note and mortgage by her was admitted, and their introduction in evidence established a prima facie case. There was no proof, or proper offer of proof, that Jennie Yarbrough was not the just owner of the land at the time of the execution of the note and mortgage. This was a part of the defendants' defense, pleaded by them in their answer. They failed to establish it or any other defense which would avoid the effect of the note and mortgage. As above stated, what might have been the effect, if the proper offer had been made, we are not called upon to decide. Nor is the effect of the act of May 27, 1908, material, since there was no conveyance offered to which such testimony could be related.

We find no error in the record, and the judgment should be affirmed.

By the Court: It is so ordered.