KASNER v. WILSON.

No. 33620. March 7, 1950.

*215 P. 2d 833.*

Arnold T. Fleig, of Oklahoma City, for plaintiff in error.

Chas. D. Scales, of Oklahoma City, for defendant in error.

HALLEY, J. This action involves a strip of land approximately eight feet wide along the south side of lot 1, block 1, Powell's Place Addition, a subdivision of a portion of Prospect Heights Addition to Oklahoma City, Oklahoma. Lot 2 of block 1 of the same addition lies south of and adjacent to lot 1. These lots face toward the west and reach the east side of Glen Ellyn street. Lot 1 is 25 feet wide, north and south, and lot 2 is 50 feet wide. Dora E. Wilson was plaintiff in the trial court and M. Kasner was defendant, and we shall refer to the parties as they appeared there.

The plaintiff, Dora E. Wilson, was the owner of lot 2 and alleged that one of her remote grantors secured a permit to erect thereon a brick duplex, and that in 1929 he erected the duplex and a garage on the rear portion of the lot. She alleges that lot 1 was vacant and that her grantor laid a concrete driveway along the north side of the duplex, on what he believed to be his own land, but which he later discovered was the south portion of lot 1. She further alleged that she and her predecessors in interest had held possession of the driveway for more than 15 years, and had thus acquired title by limitations to the land on which it lay. She prayed that title be quieted in her and that the defendant be perpetually barred and enjoined from asserting any interest in the driveway land.

An amended petition was filed, in which it was alleged that the defendant had obtained a resale tax deed in 1941 conveying lot 1 to him, and that in 1945 the defendant had filed an action to quiet title to lot 1 and had obtained a judgment against the plaintiff and others, but denied that the judgment was valid as to her because she had not been served with summons and had not been made a party when the action was first filed, but had been made a party by interlineation without additional allegations. It was further alleged that the boundary line between lot 1, owned by the defendant, and lot 2, owned by the plaintiff, had for more than fifteen years been recognized and acquiesced in as the north edge of the driveway along the south side of lot 1, and that the planitiff had gained a right thereto by prescription.

The defendant answered and set up the judgment which he had obtained in 1945, quieting title to lot 1 in him, and alleged that he had acquired title to lot 1 by a valid resale tax deed in 1941. He denied that plaintiff had held possession of the driveway land for a sufficient time to acquire title by prescription.

The court found and concluded that the north boundary line of lot 2 was the north edge of the driveway, and perpetually enjoined the defendant from asserting any claim to that portion of lot 1 covered by the driveway. The court based its conclusions upon its finding that the judgment in 1945, quieting title in defendant to lot 1, was ineffective because a quiet-title action did not fix boundaries where there were adverse claims; that the plaintiff and her predecessors had held possession of the land for more than 15 years, during which time the boundary line so fixed had been recognized and acquiesced in by the adjoining owners; that lot 1 was assessed for 1936 to 1940 as vacant land, while the driveway was assessed as improvements on plaintiff's property; and that the county never acquired title to lot 1 by resale. It was further concluded that a resale tax deed gives a title in the nature of a new and independent grant from sovereign authority, but that adverse claimant's possession is not interrupted by a resale for taxes, where claimant remains in possession after the sale; and further, that property rights which are excluded from the assessment for taxes are not sold or extinguished by a tax sale, and that a resale tax deed according to lot and block does not reestablish the boundaries where adjacent owners have recognized and acquiesced in a different line for a long period of time, even though the statute

of limitations had not elapsed at the time of the tax sale.

The defendant relies upon three alleged errors for reversal:

First, that the court erred in holding that the boundary line between lots 1 and 2 was the north edge of the driveway, instead of the lot line as fixed by the recorded plat of Powell's Place Addition.

Second, that the court erred in holding that the adverse possession of the plaintiff, which was incomplete at the time of the 1941 resale, continued to run thereafter as against the resale purchaser.

Third, that the court erred in holding that the quiet-title judgment obtained by defendant in 1945 was not res adjudicata as against the claims of the plaintiff.

In view of the fact that whatever claim the plaintiff has to the land in controversy is grounded on prescription, and that the defendant relies entirely upon his resale tax deed, we shall first consider the second proposition. What character of title is vested by a resale tax deed? It is admitted here that the deed to the defendant is regular and valid. Section 432f, 68 O.S 1941, provides as follows:

"The issuance of such deed shall effect the cancellation and setting aside of all delinquent taxes, assessments, penalties and costs previously assessed or existing against said real estate, and of all outstanding individual and county tax sale certificates, and shall vest in the grantee an absolute and perfect title in fee simple to said lands."

In Johnson v .Williams, 192 Okla. 163, 134 P. 2d 584, it was announced in the body of the opinion relative to the effect of resale tax deeds as follows:

"It is clear that the effect of a valid resale deed, under the preceding and present statutes, is to divest the former owner of all interest in the property, and to vest a perfect fee simple title in the purchaser, regardless of whether the county or a third person is the purchaser."

In Cook v. Hammett, 192 Okla. 298, 135 P. 2d 962, it was held that a plaintiff who relies upon documentary title from the county must trace his title to the county and no further. The deed to the plaintiff from the county was regular in form, as it is admitted to be in the case under consideration. It was said in the body of that opinion:

"We have frequently held that a resale tax deed by the county treasurer to the county creates a new or virgin title."

In Cook v. Hammett, supra, the court cites Taylor et al. v. Lawrence et al., 176 Okla. 75, 54 P. 2d 634, which case quotes the following paragraphs from Baird v. Stubbins, 58 N. D. 351, 226 N. W. 529, 65 A.L.R. 1009:

"A valid tax title is a new title— 'an independent grant from the sovereignty, which bars all other titles or equities, whether of record or otherwise.' Windom v. Schuppel, 39 Minn. 35, 38 N. W. 757. 'It cuts off all interests acquired by purchasers at tax sales . . . prior to that upon which the tax deed is based.' Emmons County v. Bennett, 9 N. D. 131, 81 N. W. 22.

" 'If the tax deed is valid, then, from the time of its delivery, it clothes the purchaser, not merely with the title of the person who had been assessed for the taxes, and had neglected to pay them, but with a new and complete title in the land, under an independent grant from the sovereign authority, which bars or extinguishes all prior titles and incumbrances of private persons, and all equities arising out of them.' Heffner v. Northwestern Mut Life Ins. Co., 123 U.S. 747, 751, 31 L.Ed. 309, 311, 8 Sup. Ct. Rep. 337, 338.

" 'A tax title, from its very nature, has nothing to do with the previous chain of title; does not in any way connect itself with it. It is a breaking up of all previous titles. The party holding such title, in proving it, goes no further than his tax deed; the former title can be of no service to him,

nor can it prejudice him. . . . In an ordinary case, it matters not how many different interests may be connected with the title, what may be the particular interest of the party in whose name the property may be listed for taxation; it may be a mere equitable right; if the land be regularly sold for taxes, the property, accompanied with a legal title, goes to the purchaser, no matter how many estates, legal or equitable, may be connected with it.'" (Citing a number of cases.)

The court then said:

"There are no cases to be found taking any contrary view to that expressed above. This court is fully in accord with the rule therein as shown by the following language from Swan v. Kuehner, 157 Okla. 37, 10 P. 2d 707:

"'The purchaser at a valid tax resale procures a title from the government which is free and clear from any former right of any former owner of the real estate.'"

The plaintiff contends that the above-stated rule is not applicable here because no former owner is shown to be claiming any right in the tract of land in controversy; that it is an adjoining owner who is claiming a right; that the county never held title, but if it did, it held title in its proprietary capacity, and that the resale deed did not interrupt the running of the statute of limitation.

The facts are that in 1941, when the resale deed was issued to the defendant, the 15-year statute had not yet become effective. The undisputed evidence shows that shortly after securing his resale deed the defendant advised the plaintiff that he owned the land on which her driveway was located. There is no evidence that any owner of lot 1, which was vacant, ever made any agreement or had any understanding or knowledge that plaintiff's driveway was on lot 1, until defendant secured title by resale tax deed. There is no evidence of recognition or acquiescence by any owner of lot 1 that the boundary between lots

1 and 2 should be and was the north edge of the driveway. The plaintiff cites Lamm et al. v. Hardigree et al., 188 Okla. 378, 109 P. 2d 225, but an examination of that case discloses that it covers only the question of long established, recognized and acquiesced-in boundary lines, and does not involve the effect of a resale tax deed.

We are convinced that the statute above quoted, to the effect that a valid resale tax deed shall vest in the purchaser "an absolute and perfect title in fee simple", is broad enough to cover any and all outstanding claims, rights and equities then existing. If the purchaser takes title subject to easements or rights of way claimed by an adjoining owner through bare possession and use, he is not vested with an absolute and perfect title in fee simple. He is taking an uncertain title that he may or may not be able to hold and enjoy. Here the predecessor erroneously constructed his driveway upon the land of another, thinking he was putting it upon his own land. It is not shown when he or his successors first discovered that he had trespassed upon the land of an adjoining owner. He should have known the width of his own lot and the width of the duplex he was building. His error was in no way the fault of the adjoining owner. We conclude that the issuance of the resale tax deed stopped the running of the statute of limitations, and that the north edge of the driveway had not been acquiesced in or recognized as the boundary line between the lots of plaintiff and defendant, and had not been possessed and used by plaintiff for a sufficient time to ripen into title by prescription.

Since the case must be reversed upon the second proposition above discussed, we do not deem it necessary to discuss the other contentions of the defendant.

The judgment is reversed, with directions to enter judgment for the defendant establishing the boundary line between lots 1 and 2, where it is shown

to be by recent surveys and plats in the record, and according to the lines as fixed by the recorded plat of Powell's Place Addition.

DAVISON, C.J., and WELCH, LUTTRELL, and JOHNSON, JJ., concur. ARNOLD, V.C.J., and CORN, GIBSON, and O'NEAL, JJ., dissent.