**W. L. ADAMS and Edna Joyce Adams, Plaintiffs in Error,**

v.

**Jessie J. PARKS et al., Defendants in Error.**

**No. 40802.**

Supreme Court of Oklahoma.

Oct. 17, 1967.

Larry Derryberry, and Oden & Oden, Altus, for plaintiffs in error.

Bob R. Scarbrough, Altus, for defendants in error.

BLACKBIRD, Justice:

This appeal involves the title to a strip of land, with dimensions of 105.4 by 270 feet, that is a part of the SE¼ SW¼ of Section 20, Township 2 North, Range 20 West of the Indian Meridian in Jackson County, now near, or within, the city limits of Altus, Oklahoma. It is situated so as to comprise a part of one of the larger tracts to which the defendants. in error, Jessie J. Parks and Melvin Marsh sought, as plaintiffs, to quiet their title in the District Court.

The controversy over the ownership of this small strip of land springs from the fact that it is within the described boundaries of land which its early-day owners, Thomas B. Hyde and his wife, conveyed to one Frank A. Terpening, in May, 1909, but thereafter deeded the strip to one H. J. Crouch, in September, 1920. As a result, two overlapping and conflicting chains of record title to the strip were commenced. The chain of title we may refer to as the "Crouch" chain is deraigned by mesne con-

veyances from H. J. Crouch, through Bertie Austin and her husband, to J. P., or James P., Hughes, and his wife—the latter couple acquiring their original claimed title by warranty deed dated July 22, 1942, from the Austins.

The conflicting, or "Terpening" chain, after one W. J. McDaniel obtained a quit claim deed from Terpening and his wife in December, 1927, was clouded by a purported sale of part of the SE¼ SW¼ of Section 20, supra, to the County, for delinquent ad valorem taxes assessed against McDaniel for the years 1929 to 1940. This was followed by the County's purported resale of said land to one Lucy C. Brackeen, in 1941. One L. E. Brown, who, in May, 1950, obtained a quit claim deed, based upon Lucy Brackeen's resale deed from the County Treasurer, in July, 1950, instituted cause No. 10,000 of the District Court in and for Jackson County, Oklahoma, styled "L. E. Brown, plaintiff v. Chester Anderson, County Treasurer * * * (and others) * * * defendants" to quiet his asserted title.

The plaintiffs in error, W. L. Adams, Jr., and Edna Joyce Adams, hereinafter referred to as "defendants" and "cross-petitioners" deraigned their claimed title through the "Terpening" chain, and L. E. Brown, and the judgment he obtained November 3rd, 1953, in said Cause No. 10,000 purporting to quiet his title.

The Crouch chain of title was also subjected to a tax sale in 1947, and to a resale in 1949, for delinquent ad valorem taxes represented in the Notice of Resale to have been due from J. P. Hughes for the years 1944 to 1948. After one W. J. Ivester obtained a County Treasurer's Resale Deed pursuant to his purchase at the 1949 resale, Hughes and his wife obtained a quit claim deed to the strip from Ivester in 1950. Thereafter, in 1961, Hughes and his wife deeded the property to Bonnie J. Ray, who, in December of the same year, deeded it to the plaintiffs.

In the present quiet title action they instituted in April, 1962, plaintiffs, who claimed through the "Crouch" chain of title, did not rely particularly on the tax title their predecessors, the Hughes acquired from the County resale purchaser, Ivester; but placed their main reliance upon establishing prescriptive title by proof of adverse possession for more than 15 years under color of title. Plaintiffs' petition, including allegations to the effect that any right, title, or interest, defendants might assert by reason of the 1941 resale deed obtained by Lucy C. Brackeen, was barred by limitations, because of plaintiffs' continued possession for more than 15 years, and the fact that said 1941 resale deed had been on record more than five years.

In their amended answer and cross petition, defendants attacked the validity of Ivester's tax resale deed of 1949, and, among other things, alleged that plaintiffs had no color of title, upon which to base their claim of title by prescription, that defendants are entitled to, but have been refused, possession of the property by plaintiffs, and that defendants and cross petitioners are entitled to have their title quieted against the plaintiffs.

At the trial, in May, 1963, plaintiffs elicited undisputed testimony from several witnesses to the effect that the strip of land in controversy had been enclosed in a fence, and that they, and their predecessors in title, beginning with Bertie Austin, who acquired her claimed title to it by warranty deed dated April 23, 1921, had been in adverse and continuous possession of it for at least 40 years. This evidence was introduced over the objection of the defendants, who took the position that evidence concerning the possession of the property during any period of time prior to the 1949 resale was inadmissible.

The defendant, W. L. Adams, Jr., admitted on the witness stand that he had never been in possession of this fenced strip, and testified that his title "stems from" the county resale deed to Lucy C. Brackeen in 1941, and that his "claim (against plaintiffs) was based on the fact" that when the early-day owner, Hyde, con-

veyed it to plaintiffs' predecessor, Crouch, he had already deeded it away eleven years previously. To support defendants' allegation of the invalidity of the 1949 tax resale deed to Ivester, which, as herein mentioned, appeared in plaintiffs' chain of title, said defendant further testified that the taxes on the property "had been paid up through the years, since 1941."

At the close of the trial, the court entered judgment quieting plaintiffs' title after specific findings to the effect that they and their predecessors in title had been in adverse possession of the property since 1921, under color of title. The court also found that the validity, or invalidity, of the 1949 tax resale deed in plaintiffs' claimed chain of title and the 1941 tax resale deed in defendants' chain of title was of no consequence since defendants had never been in possession of the property, and any right, title, or interest they may have had therein had "long since" been barred by the statute of limitations in such cases made and provided; and that plaintiffs had been in actual, adverse possession of the property also for more than five years since the recording of the 1949 resale tax deed.

Notwithstanding the fact that there was no verdict in the case, as it was tried solely by the court, the defendants and cross petitioners thereafter filed a combination "MOTION FOR NEW TRIAL" and "MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT AND JUDGMENT." After this was overruled they perfected the present appeal.

Under a single proposition for reversal, defendants first argue that the trial court erred in overruling the motion they filed after judgment, because plaintiffs' pleading and evidence did not show their claim of prescriptive title had any "color of title" to support it. This contention is based on the hypothesis that since the subject strip comprised a part of the land Hyde had already conveyed to Terpening many years before he and his wife purportedly deeded it to Crouch, the latter deed was a nullity for all purposes.

This hypothesis is not sound. The fact that Hyde had already divested himself of title to the strip, when he and his wife later purported to convey it to Crouch, does not mean that the deed to Crouch was insufficient to constitute color of title. In the early case of Woodruff v. Wallace, 3 Okl. 355, 374, 41 P. 357, 363, it was said:

\* \* \* \* \* \*

"One of the best definitions of the phrase, 'color of title' is found in Brooks v. Bruyn, 35 Ill. 392, and, as defined by that court is: 'Any instrument having a grantor and grantee, and containing a description of the lands intended to be conveyed, and apt words for their conveyance, gives color of title to the lands described. Such an instrument purports to be a conveyance of title; and, because it does not, for some reason, have the effect, it passes only color, or the semblance, of title. It makes no difference whether the instrument fails to pass an absolute title because the grantor had none to convey, \* \* \*."

\* \* \* \* \* \*

See also Dix v. Burkhard, 191 Okl. 443, 130 P.2d 837, 839, citing Spaulding v. Beidleman, 60 Okl. 183, 160 P. 1120. In view of the above, we find no merit in defendants' first contention.

Defendants next contend, in substance, that when Lucy C. Brackeen purchased the 8-acre tract that included the subject strip at tax resale in 1941, she acquired, by her resale deed, a new and independent title from the County, free and clear of all claimed interest of former owners, and that, since plaintiffs commenced no action to cancel or avoid this deed within a year from the date it was filed of record, they were barred from attacking it in this action some twenty-one years later, citing the syllabus in North v. Young, Okl., 258 P.2d 887. There is no merit in this contention; and that cited case, as well as Kasner v. Wilson, 202 Okl. 497, 215 P.2d 833, also cited by defendants, does not apply, because, as indicated by the undisputed evidence hereinbefore referred

to, plaintiffs' predecessors had perfected prescriptive title to the strip, and had been in adverse and exclusive possession of it for more than 15 years previous to the tax sale and resale upon which Lucy C. Brackeen's deed was based. As shown by this court's opinion in Kasner (215 P.2d, p. 836 supra,) the property there involved "had not been possessed and used by plaintiff for a sufficient time to ripen into title by prescription." As hereinbefore shown, defendants' pleading indicated that they had never had (but wanted) possession of the subject strip, and there was no evidence that Lucy Brackeen, or anyone claiming under her resale tax deed, which defendants rely upon as evidence of a virgin title, had ever been in possession of it. See Sarkeys v. Scott, Okl., 269 P.2d 779. As said in Walker v. Hoffman, Okl., 405 P.2d 57, 61:

"In Lind v. Stubblefield, supra [138 Okl. 280, 282 P. 365], it was further said:

'There is another reason why the demurrer was properly overruled. It must be remembered that the plaintiff alleged possession of the premises. In a well-known text, (Cyc. vol. 37, p. 1505), under the subject "Taxation and Tax Titles," directly on the point at issue, it is said:

" 'So long as the original owner of land which has been sold for taxes remains in undisturbed possession of it, the statute of limitations does not run against him or prevent the maintenance of a suit to set aside the tax sale or remove the cloud on his title.'

'The above text is supported by citation of authorities from nearly all the states, among them being the case of Cadman v. Smith, 15 Okl. 633, 85 P. 347.

\*    \*    \*    \*    \*    \*

'A recent case supporting the above rule is Electrolytic Copper Co. v. Rambler Conso. Mines Corp., 34 Wyo. 304, 243 P. 126, in which the court said:

" 'In Baldwin v. Merriam supra [16 Neb. 199, 20 N.W. 250], the Nebraska court considered a statute like that of Iowa, C.S. Neb. 1881, p. 425 § 134. The court said: *"Even if the (tax) deeds had been valid on their face, the statute would not commence to run in favor of the holder until he took possession.* A party in actual possession of real estate cannot be ousted from such possession or his title divested by merely recording a tax deed of which he may not be aware and under which nothing is claimed. If a party claims under a tax deed and invokes the aid of the special statute of limitations, he must bring himself within the rule as to adverse possession." ' "

In Williams v. Bailey, Okl., 268 P.2d 868, 871, this court quoted, with approval from 12 C. J., Constitutional Law, § 1000, in part, as follows:

\*    \*    \*    \*    \*    \*

" 'The legislature may not \* \* \* require a person having title and possession to take the initiative in court proceedings under penalty of being deprived of his property rights.' "

If Lucy Brackeen, or her grantee, Dora Bailey, had desired to quiet the title based upon Lucy's resale tax deed, one of them should have commenced an action for that purpose within two years after it was recorded (see Collins v. Smith, Okl., 372 P.2d 878, 880, 881, quoting Lane v. Bass, 193 Okl. 682, 146 P.2d 563); and, as unrefutedly pointed out by plaintiffs, Cause No. 10,000, supra, instituted by Dora Bailey's grantee, Brown, in 1950, was ineffective for this purpose, as to plaintiffs and their predecessors subsequent to the commencement of the two conflicting chains of title, because none of these persons were parties to said action.

Defendants also argue that, for several reasons (including the undisputed testimony that no ad valorem taxes on the subject strip had become delinquent since 1941) "to hold that the Tax Deed to W. J. Ivester, dated May 9, 1949, gave any color of title to the plaintiffs \* \* \* would certainly not be logical when the J. P. Hughes tract was sold, the strip 105.4 feet by 270 feet could

not have been reasonably included." In view of what we have already said, and the trial court's correct findings and conclusions that plaintiffs had a good prescriptive title based upon their and their predecessors' many years of exclusive, adverse, possession under the color of title furnished by the deed from the Hydes to Crouch—irrespective of Ivester's hereinbefore mentioned County Treasurer's tax deed—it is unnecessary to deal specifically, or in detail, with these arguments.

We have carefully examined the entire record and have considered all of defendants' arguments and have found in none of them any cause for reversing the judgment of the trial court. It is therefore affirmed.

All the Justices concur.