2005 OK CIV APP 97

Chris **JOHNSON** and Suzette Johnson, Husband and Wife; Gilbert L. DuPertuis and Patricia A. DuPertuis, Husband and Wife; and Chad Miller, Plaintiffs/Appellants,

v.

Julia **AUGUST** and Julia August d/b/a TNT Enterprises, Defendants/Appellees.

No. 99,884.

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 25, 2005.

Monty L. Bratcher, Edmond, OK, for Plaintiffs/Appellants.

F. Smith Barnes, F. Smith Barnes, A Professional Corporation, Oklahoma City, OK, for Defendants/Appellees.

Opinion on Rehearing by JERRY L. GOODMAN, Judge.

¶1 Plaintiffs appeal the trial court's September 8, 2003 order granting Julia August and Julia August d/b/a TNT Enterprises (TNT) summary judgment in a quiet title action. They also appeal the trial court's October 2, 2003, order awarding TNT an attorney's fee. Based upon our review of the facts and applicable law, we affirm.

## FACTS

¶2 Plaintiffs are three homeowners whose land abuts a dry creek bed, which each erroneously believed to constitute their back lot line. In fact, the dry creek bed was located on a separate lot that was rendered useless for development by the creek bed. The owner of the creek bed lot is not apparent from this record. According to their appellate brief, each Plaintiff, or his or her predecessor in title, has used, fenced, or occupied portions of the creek bed lot for more than 15 years. Though the record is silent at this point, it appears that taxes on the creek bed lot became delinquent, and Oklahoma County took title to the creek bed lot for delinquent taxes. See, 68 O.S.2001, § 3108. It further appears that the owner of record did not redeem the lot from the County within the statutory period of time. See, 68 O.S.2001, § 3125.

¶ 3 TNT purchased the creek bed lot from County and was issued a Resale Tax Deed, which was filed of record on June 14, 2001.[1] See, 68 O.S.2001, §§ 3125, 3129, 3131, 3132.

¶ 4 It is undisputed that TNT sent a letter to each Plaintiff notifying them of its acquisition of the resale deed to the creek bed lot. In the letter, TNT apparently offered to sell the creek bed lot to Plaintiffs, for on July 22, 2002, Plaintiffs' attorney wrote a response letter to TNT, declining the offer, and instead demanding TNT relinquish title to the creek bed lot in favor of each Plaintiff.

¶ 5 Plaintiffs claimed title to the creek bed lot by adverse possession and sued TNT seeking quiet title. Each side filed a motion for summary judgment, seeking to quiet title in themselves.[2] The trial court, in an order filed September 8, 2003, denied Plaintiffs' motion and granted TNT's motion for summary judgment. The trial court awarded an attorney's fee to TNT. Plaintiffs appeal. The issue tendered for resolution is whether title obtained from this resale tax deed is superior to title acquired by prescription. Under these facts, we hold it is, and affirm the trial court.

## STANDARD OF REVIEW

¶ 6 A summary judgment disposes solely of issues of law and, therefore, it is reviewable by a de novo standard. *Manley v. Brown*, 1999 OK 79, 989 P.2d 448; *Neil Acquisition, LLC v. Wingrod Inv. Corp.*, 1996 OK 125, 932 P.2d 1100. In a de novo review, we have plenary, independent, and non-deferential authority to determine whether the trial court erred in its application of the law and whether there is any genuine issue of material fact.

*Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, 859 P.2d 1081.

## ANALYSIS

¶ 7 TNT is the holder of a resale tax deed issued by Oklahoma County. After the taxes on the creek bed lot became delinquent, the creek bed lot was sold for taxes, with Oklahoma County purchasing the lot. After two years elapsed without the record owner redeeming the title, Oklahoma County sold the property to TNT, issuing a resale tax deed. Because TNT was not the original purchaser of the creek bed lot, it was never issued a certificate of purchase, and therefore was not issued a tax deed from Oklahoma County.

¶ 8 TNT asserts it holds valid title because its resale tax deed grants superior title over the adverse possession claims of Plaintiffs, citing 68 O.S.2001, § 3118, and *Kasner v. Wilson*, 1950 OK 58, 215 P.2d 833.

¶ 9 Title 68 O.S.2001, § 3118(A) states in relevant part:

If no person shall redeem any land on which the tax lien has been sold within two (2) years ... and on production of the certificate of purchase, the county treasurer of the county in which the sale of such land took place shall execute to the purchaser ... a deed for land remaining unredeemed. *The deed shall vest in the grantee an absolute estate in fee simple in the lands, subject however, to all claims which the state may have on the lands for taxes or other liens or encumbrances and shall extinguish the rights of any mortgagee of record of the lands to whom notice was sent as provided for by law.* (Emphasis added.)

---

1. There was no contention by either party that the Resale Tax Deed filed June 14, 2001, was invalid. However, a copy of that deed was omitted from the appellate record and, coupled with certain statements found in the record, led this court to initially conclude the Resale Tax Deed was issued within a legally impossible time frame, an issue which we addressed in the original opinion. Upon rehearing, an abstract of the Resale Tax Deed was submitted and the record was clarified, and our concerns regarding the validity of the Resale Tax Deed were satisfied. We have therefore withdrawn our original opinion and issue this opinion on rehearing to address the issues originally tendered for our review in light of the record clarification. A complete record is essential for this court's review.

2. Though TNT's answer did raise affirmative defenses, TNT did not file a counterclaim seeking affirmative relief in form of quiet title. Thus, even though the trial court granted quiet title to TNT as to the three homeowners, TNT has yet to file a quiet title action as to the record title owner or any other entity who may have in interest in the creek bed lot.

 ¶ 10 Although § 3118 specifically addresses tax deeds issued upon production of a certificate of purchase, and does not specifically address resale tax deeds, our courts have long ascribed the same quality of title to both certificate of purchase/tax deeds and resale tax deeds. As stated in *Taylor v. Lawrence,* 1936 OK 176, 54 P.2d 634:

The title taken by Creek County under this resale deed was a virgin title, comparable to a patent from the government, unaffected, either for good or ill, by anything pertaining to the former chain of title. The rule is well expressed and in the strongest possible language in *Baird v. Stubbins,* 58 N.D. 351, 226 N.W. 529, 531, 65 A.L.R. 1009, at page 1013, in actual excerpts from the opinions of various state courts, as follows:

The defendant here was not such a purchaser. She does not claim under the record owner, but by conveyance from the state, which, if valid, cuts off the title of the record owner altogether. *Smith v. Williams, supra* [44 Mich. 240, 244, 6 N.W. 662, 663]. A tax deed makes no reference to the former owner or owners. It does not purport to convey the estate of the former record owner. There is no privity between the holder of the fee and one who claims a tax title upon the land. The latter title is not derived from, but in antagonism to, the former. The holder of the latter is not a privy in estate with the holder of the former. *Hussman v. Durham,* 165 U.S. 144, 147, 17 S.Ct. 253, 254, 41 L.Ed. 664, 665.

"A valid tax title is a new title—" An independent grant from the sovereignty, which bars all other titles or equities, whether of record or otherwise. *Windom v. Schappel,* 39 Minn. 35, 38 N.W. 757, 758. It "cuts off all interests acquired by purchasers at tax sales for taxes prior to that upon which the tax deed is based." *Emmons County v. Bennett,* 9 N.D. 131, 133, 81 N.W. 22.

*Taylor,* 1936 OK 176 at ¶ 12, 54 P.2d at 638.

 ¶ 11 A resale tax deed is effective not only against the record title holder, but against persons claiming title by prescription. Thus, TNT's title, acquired by a valid tax resale deed, is superior to Plaintiffs' title, acquired by prescription.

A valid resale tax deed divests former owners of all their right, title and interest in the land, and vests in the purchaser an absolute and perfect title in fee simple. The term "former owners," as used in this connection, includes not only the former owners of record but also includes all persons claiming an interest in the property by prescription, and claims based upon prior occupancy are extinguished by the resale tax deed and cannot ripen into title by limitations by virtue of continued occupancy for less than fifteen years after date of resale tax deed. (*Syllabus by the Court.*)

*Kasner v. Wilson,* 1950 OK 58, ¶ 0, 215 P.2d 833. Further,

In *Cook v. Hammett,* 192 Okl. 298, 135 P.2d 962, 964, it was held that a plaintiff who relies upon documentary title from the county must trace his title to the county and no further. The deed to the plaintiff from the county was regular in form, as it is admitted to be in the case under consideration. It was said in the body of that opinion:

"We have frequently held that a resale tax deed by the County Treasurer to the county creates a new or virgin title."

In *Cook v. Hammett, supra,* the court cites *Taylor et al. v. Lawrence et al.,* 176 Okl. 75, 54 P.2d 634, 638, which case beginning page 638 quotes the following paragraphs from *Baird v. Stubbins,* 58 N.D. 351, 226 N.W. 529, 65 A.L.R. 1009:

"A valid tax title is a new title—" An independent grant from the sovereignty, which bars all other title or equities, whether of record or otherwise. *Windom v. Schappel,* 39 Minn. 35, 38 N.W. 757, 758. It "cuts off all interests acquired by purchasers at tax sales * * * prior to that upon which the tax deed is based." *Emmons County v. Bennett,* 9 N.D. 131, 133, 81 N.W. 22.

"If the tax deed is valid, then, from the time of its delivery, it clothes the purchaser, not merely with the title of the person who had been assessed for the taxes, and

had neglected to pay them, but with a new and complete title in the land, under an independent grant from the sovereign authority, which bars or extinguishes all prior titles and incumbrances of private persons, and all equities arising out of them."
*Hefner v. Northwestern Mut. Life Ins. Co.,* 123 U.S. 747, 751, 8 S.Ct. 337, 338, 31 L.Ed. 309, 311.

*Kasner v. Wilson,* 1950 OK 58 at ¶ 12, 215 P.2d at 835. The reason a tax resale deed is superior to any claims of prescription is explained by the court:

> [A] tax deed shall vest in the purchaser "an absolute and perfect title in fee simple," is broad enough to cover any and all outstanding claims, rights and equities then existing. If the purchaser takes title subject to easements or rights of way claimed by an adjoining owner through bare possession and use, he is not vested with an absolute and perfect title in fee simple. He is taking an uncertain title that he may or may not be able to hold and enjoy.

*Kasner v. Wilson,* 1950 OK 58, ¶ 17, 215 P.2d 833, 836.

■ ¶ 12 Plaintiffs contend their interest in the property, which was acquired by prescription, is superior to any interest conferred by the tax resale deed because the 15–year occupation period required to obtain title by adverse possession passed before the tax resale deed was issued. Plaintiffs cite *Adams v. Parks,* 1967 OK 217, 435 P.2d 122 in support of their argument. We find *Adams* distinguishable on its facts and thus reject this proportion of error.

¶ 13 In *Adams,* the property owners acquired equitable title to the property by prescription, having continuously occupied the property for more than 15 years before 1941, when the tax deed holder purchased legal title to the property by resale deed. However, the resale deed holder did not initiate a suit against the prescriptive property owners within the applicable statute of limitations. The prescriptive property owners therefore remained in physical possession of the disputed property not only for the fifteen-year prescription period, but also for the duration of the statute of limitations period, which at that time was two years. The *Adams* court first recognized that the 15–year prescriptive period could be interrupted and extinguished by a person holding a resale tax deed, which is consistent with the authorities cited above. *Adams* then held, however, that once the 15–year prescriptive period had passed, and the person holding a resale tax deed failed to seek to quiet title to himself within the applicable statute of limitations, a prescriptive claim could, under those circumstances, supercede title given by a resale tax deed.

> The 15–year period of adverse possession necessary for prescriptive title to realty may be interrupted, and a claim of title based thereon extinguished by a tax resale of the property; but, where such period entirely elapsed, and such claim of title matured, before the 1941 resale, and the prescriptive claimant or his successors in title, *thereafter remained in possession until after expiration of the period prescribed by Tit. 12 O.S.1941, s 93(3)* for instituting an action for the recovery of real property sold for taxes, the prescriptive claimant's title may be correctly quieted against those claiming under the tax resale deed.

*Adams,* 1967 OK 217, ¶ 0, 435 P.2d 122 (syllabus by the court) (emphasis added).

¶ 14 The dissent cites the same passage in support of its contention that Plaintiffs have been in undisturbed possession of the creek bed lot for 15 years, thus making TNT's resale deed of no effect. However, as emphasized above, the *Adams* court states that not only must the prescriptive title holders remain undisturbed for 15 years, there must also be no chance the resale tax deed holder could assert possession or superior title because of the passage of the statute of limitations.

¶ 15 Such is not the case here. TNT is now seeking possession and quiet title to the creek bed lot well within the five-year statute of limitations for asserting such a claim arising from a resale tax deed. Though Plaintiffs have been in actual, undisturbed possession for 15 years, the applicable statute of limitations period has not lapsed as to TNT,

and therefore the holding in *Adams* is inapplicable to the facts in this case.

¶ 16 As to the lack of notice asserted by the dissent, TNT did not first obtain a certificate of purchase which was later redeemed for a tax deed, but rather acquired title directly from the County by a resale tax deed. The dissent correctly points out that before a certificate title holder can obtain a tax deed, it must give notice to the record owner or those in possession of the property. § 3118. The burden of notice is correctly placed on the certificate holder, because the certificate holder determines the time when it will redeem the certificate for a tax deed. *See, Coates v. Hewgley,* 1978 OK CIV APP 35, ¶ 3, 581 P.2d 929, 931. However, because the County originally purchased the property, and later sold it to TNT in the form of a resale tax deed, it is incumbent not upon TNT, but upon the County, to serve notice. This is so because it is the County, and not TNT, which determines when it will offer the property for sale. This is accomplished through notice by publication, pursuant to § 3127. Further, the issuance of a resale tax deed is prima facie evidence that proper notice was given by the County. See, 68 O.S.2001, § 3133. There is a specific statutory procedure to attack the validity of a resale tax deed, § 3140, which was not followed. Indeed, the parties agree the resale tax deed is valid.

## SUMMARY

¶ 17 We agree with Plaintiffs that the 15–year prescription period appears to have passed. However, TNT's request for quiet title was made within the applicable statute of limitation period. TNT, possessing a tax resale deed, requested quiet title as to these Plaintiffs within the applicable statute of limitations. TNT holds fee simple title to the creek bed lot. The trial court's correctly interpreted the applicable statutory and case law to the facts of this case. Its legal judgment is correct. The September 8, 2003, judgment is affirmed. The trial court's October 2, 2003 order, memorializing an agree-

ment between the parties as to the award of an attorney's fee, is affirmed.

¶ 18 AFFIRMED.

REIF, J. (sitting by designation), concurs, and STUBBLEFIELD, Acting P.J., dissents.

STUBBLEFIELD, Acting P.J., dissenting:

¶ 1 I respectfully dissent because I believe this case falls squarely within the dictates of the Oklahoma Supreme Court's decision in *Adams v. Parks,* 1967 OK 217, 435 P.2d 122 (syllabus 2), which held:

> The 15–year period of adverse possession necessary for prescriptive title to realty may be interrupted, and a claim of title based thereon extinguished by a tax resale of property; but, where such period entirely elapsed, and such claim of title matured, before the 1941 resale, and the prescriptive claimant or his successors in title, thereafter remained in possession until after expiration of the period [of five years set forth in the statute of limitations] for instituting an action for the recovery of real property sold for taxes, prescriptive claimant's title may be correctly quieted against those claiming under the tax resale deed. [12 O.S.1941 § 93(3).]

I see this as a clear holding that a holder of prescriptive title, still in possession, must prevail over a person claiming by resale tax deed where the prescriptive title matured prior to the issuance of the tax deed. The *Adams* Court expressly determined that *Kasner v. Wilson,* 1950 OK 58, 215 P.2d 833, did not apply where title had been obtained by adverse possession *prior to the issuance of the tax deed.* *Adams,* 1967 OK 217 at ¶ 13, 435 P.2d at 125–26.

¶ 2 The majority acknowledges that Plaintiffs' prescriptive title had vested prior to the issuance of the tax deed (according to uncontroverted affidavits in the record) and does not dispute that Plaintiffs remained in possession of the disputed property. However, it attempts to read into *Adams* something other than the true holding of the case. I consider totally dispositive the fact that the *Adams* Court favorably cited language to the effect that the limitation period in which to

maintain an action to cancel a tax deed does not run against a claimant of prescriptive title still in possession. *Id.* at ¶ 14, 435 P.2d at 126 (quoting *Walker v. Hoffman,* 1965 OK 36, ¶ 17, 405 P.2d 57, 61). Thus, when Plaintiffs filed this quiet title action, they had no legal impediment to their cancellation of the original tax sale, as part of an action to cancel the tax resale deed of TNT. If they need to amend their petition to do so, or add additional parties, then they should be granted leave to amend.

¶ 3 A related basis for reversal of the summary judgment is that it is undisputed that Plaintiffs' first notice of a challenge to their ownership of the disputed property came after TNT obtained the resale tax deed, and then notified all Plaintiffs by mail that it claimed part of their lands by virtue of the deed, but would sell the property to them for $19,500 each. However, 68 O.S.2001 § 3118(A) requires that, before a party holding a tax sale certificate is entitled to a tax deed, he or she must cause "a written notice signed by such holder to be served ... upon the owner of the land if the owner is within the state, *upon the person in possession of the land, if the same be occupied,* and upon all mortgagees and lienholders of record of the land." It is not disputed for purposes of the summary judgment that Plaintiffs were in possession of the disputed land. Thus, it appears on the face of the pleadings that there was a total failure of the statutory notice requirement. The undisputed facts of record tend to demonstrate that Plaintiffs may maintain an action against the County, along with TNT, to set aside the original tax deed. Again, if Plaintiffs need to amend their petition to pursue this relief, they should be granted leave to do so. *See* 12 O.S.2001 § 2019.

¶ 4 I note the Oklahoma Supreme Court's language in *Adams* that "[a] party in actual possession of real estate cannot be ousted from such possession or his title divested by merely recording a tax deed *of which he may not be aware and under which nothing is claimed." Adams,* 1967 OK 217 at ¶ 14, 435 P.2d at 126 (quoting *Walker,* 1965 OK 36 at ¶ 17, 405 P.2d at 61). That language is especially pertinent to this case where the Plain-tiffs apparently had no notice whatsoever of the tax deed proceedings until TNT demanded that each Plaintiff pay $19,500 for their own lands.

¶ 5 Another reason for reversal apparent of record, and even noticed by the majority, is that TNT did not file an action to quiet title, nor file a cross-petition to Plaintiffs' action, or even affirmatively ask in its answer that title be quieted. Yet the Trial Court quieted title as against Plaintiffs. This is an order outside the scope of the requested relief and is fundamentally erroneous.

¶ 6 I conclude that the Trial Court erred in granting summary judgment. From the record it appears that Plaintiffs eventually should prevail in their action. Certainly, they should be entitled to fully elicit the facts of the case and amend to add any necessary parties. I would reverse the appealed judgment and remand for further proceedings.